[Crim. No. 21692. Feb. 4, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY WRIGHT, Defendant and Appellant.

**COUNSEL**

Jeff Reich, under appointment by the Supreme Court, for Defendant and Appellant.

Quin Denvir, State Public Defender, and Mark E. Cutler, Chief Assistant State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROUSSARD, J.**—After guilty pleas to two counts of burglary in the second degree (Pen. Code, §§ 459, 460) defendant was sentenced to prison for three years on each count, the terms to run concurrently. On this appeal he attacks the validity of California Rules of Court, rules 421 and 423, providing criteria governing aggravation and mitigation for sentencing purposes.

In the first burglary defendant obtained entry to a residence by smashing the glass in the front door. The residents were out of town at the time. He took numerous items of jewelry, clothing and personal effects along with about $200 in coins and currency. The value of the stolen items was originally estimated at $1,500 but later increased to $2,300.

In the second offense occurring six days later, defendant obtained entry to a residence by breaking a window near the front door at a time when the resident was absent. He took stereo equipment, two color televisions, radios, jewelry, silverware and coins with an estimated value of $3,250. A neighbor observed a vehicle leaving the residence, and when defendant was apprehended after a high-speed chase he admitted the first offense and cooperated with authorities by pointing out the scene of other burglaries he committed.

Defendant had nine convictions over the prior twelve years ranging in seriousness from possession of liquor by a minor, loitering, grand theft auto, and grand theft from the person. Although never sent to prison, he had served county jail terms and been committed to California Rehabilitation Center as a narcotics addict.

Defendant expressed remorse in his interview with the probation officer. He stated that his motive for the offenses was to obtain money to return to his home in Oregon. He admitted using approximately $20 of heroin per week prior to his arrest.

Addressing the question of the alternative punishments of sixteen months, or two or three years for second degree burglary (Pen. Code, §§ 461, 18), the probation officer recommended the maximum. He referred to one factor in mitigation, defendant's voluntary cooperation with the authorities subsequent to arrest. (Cal. Rules of Court, rule 423(b)(3).) The report referred to seven factors in aggravation: The

crimes involved (1) multiple victims, (2) premeditation, (3) the taking of property of great monetary value, and defendant (4) had numerous prior convictions, (5) had been committed to the California Rehabilitation Center, (6) was on parole when the burglaries were committed, and (7) had unsatisfactory parole performance.

Following argument, the court found the single mitigating factor and the first four aggravating factors. The court denied probation, and because of the aggravating factors sentenced defendant to three years on each conviction, the terms to run concurrently.

█ Defendant urges that adoption of rules 421 and 423 are contrary to powers granted the Judicial Council by article VI, section 6 of our Constitution and that the legislative direction to adopt such rules lacks proper standards and is an invalid delegation of legislative power.

Prior to 1977, a system of indeterminate sentences was followed in California. In 1976, the Legislature enacted the Determinate Sentencing Act (Stats. 1976, ch. 1139) adopting a system of specification of three possible terms of imprisonment for each offense (Pen. Code, § 1170, subd. (a)(2)). In determining which term to impose, "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." (Pen. Code, § 1170, subd. (b).) The Legislature directed the Judicial Council to "promote uniformity" in sentencing by adoption of rules providing criteria for trial judge consideration regarding imposition of lower or upper prison terms. (Pen. Code, § 1170.3, subd. (a).)[1] The statutory authorization permits the council to adopt rules establishing circumstances in aggravation and mitigation relating to the crime and to the defendant. (*People* v. *Harvey* (1979) 25 Cal.3d 754, 758 [159 Cal.Rptr. 696, 602 P.2d 396]; *People* v. *Cheatham* (1979) 23 Cal.3d 829, 833 et seq [153 Cal.Rptr. 585, 591 P.2d 1237].)

---

[1]Penal Code section 1170.3, subdivision (a) provides: "The Judicial Council shall seek to promote uniformity in sentencing under Section 1170, by:

"(a) The adoption of rules providing criteria for the consideration of the trial judge at the time of sentencing regarding the court's decision to:

"(1) Grant or deny probation.

"(2) Impose the lower or upper prison term.

"(3) Impose concurrent or consecutive sentences.

"(4) Consider an additional sentence for prior prison terms.

"(5) Impose an additional sentence for being armed with a deadly weapon, using a firearm, an excessive taking or damage, or the infliction of great bodily injury."

The Judicial Council adopted Sentencing Rules for the Superior Courts. (Cal. Rules of Court, rules 401-453.) The trial court must consider the criteria enumerated in the rules and may also consider additional criteria reasonably related to the decision and stated on the record. (*Id.* rules 408, 409.) Selection of the upper term is justified only if circumstances in aggravation are established by a preponderance of evidence and outweigh circumstances in mitigation. Similarly, selection of the lower term is justified only if circumstances in mitigation are established by a preponderance of the evidence and outweigh circumstances in aggravation.

Rule 421 lists circumstances in aggravation,[2] rule 423 circumstances in mitigation.[3]

---

[2] Rule 421 provides: "Circumstances in aggravation include:

"(a) Facts relating to the crime, including the fact that:

"(1) The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness, whether or not charged or chargeable as an enhancement under section 12022.7.

"(2) The defendant was armed with or used a weapon at the time of the commission of the crime, whether or not charged or chargeable as an enhancement under section 12022 or 12022.5.

"(3) The victim was particularly vulnerable.

"(4) The crime involved multiple victims.

"(5) The defendant induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission.

"(6) The defendant threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally interfered with the judicial process.

"(7) The defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed.

"(8) The planning, sophistication or professionalism with which the crime was carried out, or other facts, indicate premeditation.

"(9) The defendant used or involved minors in the commission of the crime.

"(10) The crime involved an attempted or actual taking or damage of great monetary value, whether or not charged or chargeable as an enhancement under section 12022.6.

"(11) The crime involved a large quantity of contraband.

"(12) The defendant took advantage of a position of trust or confidence to commit the offense.

"(b) Facts relating to the defendant, including the fact that:

"(1) He has engaged in a pattern of violent conduct which indicates a serious danger to society.

"(2) The defendant's prior convictions as an adult or adjudications of commission of crimes as a juvenile are numerous or of increasing seriousness.

"(3) The defendant has served prior prison terms whether or not charged or chargeable as an enhancement under section 667.5.

"(4) The defendant was on probation or parole when he committed the crime.

"(5) The defendant's prior performance on probation or parole was unsatisfactory."

[3] Rule 423 provides: "Circumstances in mitigation include:

"(a) Facts relating to the crime, including the fact that:

"(1) The defendant was a passive participant or played a minor role in the crime.

Article VI, section 6 of the California Constitution provides in part: "To improve the administration of justice the council shall survey judicial business and make recommendations annually to the Governor and Legislature, *adopt rules for court administration, practice and procedure, not inconsistent with statute and perform other functions prescribed by statute.*"

The constitutional provision empowers the council without further legislative authorization to "adopt rules for court administration, practice and procedure, not inconsistent with statute." The additional provision permitting the council to "perform other functions prescribed by statute" establishes that the council may perform additional functions when authorized by the Legislature.

The fact that the direct grant of power to adopt "rules" is limited to "court administration, practice and procedure" does not mean that the Legislature may not grant to the council additional power to adopt rules, including rules governing substantive matters. This section is phrased in terms of a grant of power to the council, not limitation, and the concluding phrase is a general grant of power to the Legislature to

---

"(2) The victim was an initiator, willing participant, aggressor or provoker of the incident.

"(3) The crime was committed because of an unusual circumstance, such as great provocation, which is unlikely to recur.

"(4) The defendant participated in the crime under circumstances of coercion or duress, or his conduct was partially excusable for some other reason not amounting to a defense.

"(5) A defendant with no apparent predisposition to do so was induced by others to participate in the crime.

"(6) The defendant exercised caution to avoid harm to persons or damage to property, or the amounts of money or property taken were deliberately small, or no harm was done or threatened against the victim.

"(7) The defendant believed he had a claim or right to the property taken, or for other reasons mistakenly believed his conduct was legal.

"(8) The defendant was motivated by a desire to provide necessities for his family or himself.

"(b) Facts relating to the defendant, including the fact that:

"(1) He has no prior record or an insignificant record of criminal conduct considering the recency and frequency of prior crimes.

"(2) The defendant was suffering from a mental or physical condition that significantly reduced his culpability for the crime.

"(3) The defendant voluntarily acknowledged wrongdoing prior to arrest or at an early stage of the criminal process.

"(4) The defendant is ineligible for probation and but for the ineligibility would have been granted probation.

"(5) The defendant made restitution to the victim.

"(6) The defendant's prior performance on probation or parole was good."

authorize the council to perform additional functions. Because the express provision authorizing the council to adopt rules for court "administration, practice and procedure" permits rule adoption without express legislative authorization, the quoted words should be read as limiting the council's power to act in the absence of legislative authorization, and not a limitation on the Legislature's general authority to confer power on state agencies expressly confirmed by the concluding phrase to "perform other functions prescribed by statute."

The authority of the Legislature to grant to the council power to adopt rules in addition to those directly authorized by article VI, section 6 has been recognized in prior cases. Under section 6, the direct authorization to adopt procedural rules is limited to rules "not inconsistent with statute," and in *In re Marriage of McKim* (1972) 6 Cal.3d 673, 678, footnote 4 [100 Cal.Rptr. 140, 493 P.2d 868], the court recognized that the Legislature by adoption of statute had authorized the council to adopt rules superseding other statutes. (See also *In re Marriage of Lusk* (1978) 86 Cal.App.3d 228, 233 [150 Cal.Rptr. 63]; *In re Marriage of Fink* (1976) 54 Cal.App.3d 357, 365, fn. 4 [126 Cal.Rptr. 626]; *In re Marriage of Dover* (1971) 15 Cal.App.3d 675, fn. 3 [93 Cal.Rptr. 384].) We conclude there is no violation of article VI, section 6.

■ An unconstitutional delegation of legislative power occurs when the Legislature confers upon an administrative agency unrestricted authority to make fundamental policy decisions. (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 816 [114 Cal.Rptr. 577, 523 P.2d 617]; *Kugler* v. *Yokum* (1968) 69 Cal.2d 371, 376 [71 Cal.Rptr. 687, 445 P.2d 303].) "This doctrine rests upon the premise that the legislative body must itself effectively resolve the truly fundamental issues. It cannot escape responsibility by explicitly delegating that function to others or by failing to establish an effective mechanism to assure the proper implementation of its policy decisions." (*Kugler* v. *Yokum, supra,* 69 Cal.2d at pp. 376-377.)

■ The doctrine prohibiting delegations of legislative power does not invalidate reasonable grants of power to an administrative agency, when suitable safeguards are established to guide the power's use and to protect against misuse. (*Southern Pac. Transportation Co.* v. *Public Utilities Com.* (1976) 18 Cal.3d 308, 313 [134 Cal.Rptr. 189, 556 P.2d 289]; *Clean Air Constituency* v. *California State Air Resources Bd., supra,* 11 Cal.3d 801, 817; *People* ex rel. *Younger* v. *County of El Dor-*

*ado* (1971) 5 Cal.3d 480, 507 [96 Cal.Rptr. 553, 487 P.2d 1193].) The Legislature must make the fundamental policy determinations, but after declaring the legislative goals and establishing a yardstick guiding the administrator, it may authorize the administrator to adopt rules and regulations to promote the purposes of the legislation and to carry it into effect. (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 201 [172 Cal.Rptr. 487, 624 P.2d 1215]; *Clean Air Constituency* v. *California State Air Resources Bd., supra*, 11 Cal.3d 801, 817; *Kugler* v. *Yokum, supra*, 69 Cal.2d 371, 376.) ■ Moreover, standards for administrative application of a statute need not be expressly set forth; they may be implied by the statutory purpose. (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 168 [130 Cal.Rptr. 465, 550 P.2d 1001]; *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 827 [129 Cal.Rptr. 443, 548 P.2d 1115]; *In re Marks* (1969) 71 Cal.2d 31, 51 [77 Cal.Rptr. 1, 453 P.2d 441]; *In re Petersen* (1958) 51 Cal.2d 177, 185-186 [331 P.2d 24].)

■ Changing from the system of indeterminate sentences to determinate sentences and fixing the alternative terms, the Legislature made the fundamental policy decision that terms were to be fixed by choosing one of the alternatives on the basis of circumstances relating to the crime and to the defendant. (See *People* v. *Harvey, supra*, 25 Cal.3d 754, 758; *People* v. *Cheatham, supra*, 23 Cal.3d 829, 833 et seq.) The Legislature directed the Judicial Council to adopt rules establishing criteria for imposing the upper or lower terms in order to promote uniformity. (Pen. Code § 1170.3, subd. (a)(2).) While promotion of "uniformity" in some circumstances may not provide a sufficient standard, the Legislature established the standard in the correlative provision of Penal Code section 1170, subdivision (b), providing that the criteria be based on the absence or presence of aggravating or mitigating circumstances.

The standards are sufficiently precise in the circumstances. The Judicial Council because of its membership including justices and judges who have extensive experience in determining sentences is uniquely situated to implement the legislative policy. Moreover, prior to the adoption of the Determinate Sentencing Act, the council had conducted seminars and institutes for judges on sentencing practices in criminal cases. (See Gov. Code, § 68551.) In the circumstances, it would be questionable, if not unwise, to reject the experience and qualifications of the agency and insist that the Legislature impose the detailed criteria when it chose to adopt the new method of sentencing. (See *In re Marks, supra*, 71

Cal.2d 31, 52.) Similar broad delegations to public agencies enjoying the expertise to implement the legislative policy have been upheld. (E.g., *id.* at pp. 52-53 [determination of outpatient status for narcotic addicts]; *Southern Pac. Transportation Co.* v. *Public Utilities Com., supra,* 18 Cal.3d 308, 313 [public convenience and necessity].)

When the case was pending before it, the Court of Appeal rejected defendant's claims that he was denied effective assistance of counsel, that the probation report was defective, that the trial court erred in finding aggravating circumstances of prior convictions and taking of property of great monetary value, and that it failed to find additional circumstances in mitigation. ■ The Court of Appeal also determined that the trial court erred in finding the aggravating factor of multiple victims but that the error did not require a remand for resentencing. We agree with the Court of Appeal's resolution of these issues and adopt its reasoning by reference. (See *Highland Ranch* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 848, 867 [176 Cal.Rptr. 753, 633 P.2d 949]; *People* v. *Meredith* (1981) 29 Cal.3d 682, 695 [175 Cal.Rptr. 612, 631 P.2d 46].)

The judgment is affirmed.

Richardson, J., Kaus, J., and Tobriner, J.,* concurred.

NEWMAN, J., Concurring.—Nearly 50 years ago this court stated: "In the creation of the board of harbor commissioners of the port of Eureka, Statutes 1869-70, page 744, it was attempted to confer upon that board power to impose penalties for any violation of such rules and regulations as that board should make pursuant to the act creating it, not exceeding, for any one violation, the sum of $500. This provision was declared unconstitutional in the case of *Board of Harbor Commissioners, etc.,* v. *Excelsior Redwood Co.* (1891) 88 Cal. 491 [26 P. 375]. The court there held that conceding the legislature could delegate to the plaintiff the authority to make rules and regulations with reference to the navigation of Humboldt Bay, the penalty for a violation thereof was in the hands of the legislature, and the error was not cured by fixing a maximum penalty, for the vice lay in attempting to delegate such legislative power to plaintiff." (*Gilgert* v. *Stockton Port District* (1936) 7 Cal.2d 384, 390 [60 P.2d 847].)

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

That reference in the final five words to "such legislative power" referred, I believe, to the power to prescribe penalties. "We are of the opinion, therefore," said Justice Pullen for a unanimous court, "that in so far as the Port District Act attempts to delegate penal authority to the port district or its commission . . . it is unconstitutional . . . ." (*Ibid.* at p. 392.)

I concur with the majority here because I have concluded that Penal Code section 1170.3 does not delegate "penal authority" within the meaning of the *Gilgert* opinion. By no means, though, would I support any inference that either *Gilgert* or *Board of Harbor Commissioners, supra,* has now been overruled. (Cf. W. Gellhorn, *Administrative Prescription and Imposition of Penalties,* 1970 Wash.U.L.Q. 265, 268: "Administrative Prescription of the Penalty Attaching to An Offense.")

In addition, it should be noted that precedents dealing with the delegation of adjudicative power (see, e.g., maj. opn., *ante* p. 713, citing *In re Marks* (1969) 71 Cal.2d 31, 52-53 [77 Cal.Rptr. 1, 453 P.2d 441], and *Southern Pac. Transportation Co.* v. *Public Utilities Com.* (1976) 18 Cal.3d 308, 313 [134 Cal.Rptr. 189, 556 P.2d 289]) rarely guide us when we are concerned with the delegation of legislative power. (See 1 Davis, Administrative Law Treatise (2d. ed. 1978) § 3:10; Newman & Surrey on Legislation (1955) pp. 603 (fn. 8.) and 620.)

**BIRD, C. J.**—I respectfully dissent.

I.

In enacting Penal Code section 1170.3, the Legislature delegated to the Judicial Council the task of legislating what crimes are aggravated and what crimes are mitigated felonies. In so doing, the Legislature failed to make the general policy decisions necessary to determine what factors justify a variance from the middle term. Although the Judicial Council's role as set forth in article VI, section 6 of the California Constitution is to adopt procedural rules, the Legislature has expanded that limited role to include the adoption of rules which essentially define substantive criminal law.

The Legislature has given its power to the Judicial Council to define the aggravating and mitigating factors to be considered by all sentencing judges, without any hint as to what factors the Legislature deemed

sufficiently important to increase or decrease the terms of imprisonment for felonies. This general delegation places the Judicial Council squarely in the business of substantive law making, unfettered by legislative guidance. This general delegation also places a reviewing court in an impossible position. There is no method by which the court can decide if the rules formulated by the council are consistent with the Legislature's will. There is nothing in the relevant statutes against which to measure the aggravating and mitigating factors drafted by the council.

In deciding whether the Judicial Council may choose which aggravating and mitigating factors are to be considered by the trial courts, the constitutional limitations placed on the Judicial Council's powers must be understood. The council's power has been constitutionally limited to "rules for court administration, practice and procedure, not inconsistent with statute . . . ." (Cal. Const., art. VI, § 6.) Substantive rule making has always been thought to be beyond the constitutional mandate of the council. (See McAllaster, *Should the Rule-Making Power Be Given to the Courts?* (1931) 6 State Bar J. 215, 220.)

The sentencing criteria in rules 421 and 423 are substantive in nature. The trial court's sentencing discretion is limited by statute only to the extent that an upper or lower term may not be imposed unless there has been a factual finding of circumstances in aggravation or mitigation. (Pen. Code, § 1170, subd. (b).) A Judicial Council rule specifies that the sentencing factors drafted and adopted by it must be used in any determination to impose the upper or lower term. (Cal. Rules of Court, rule 409.) The factors listed in rules 421 and 423 thus become the method by which the aggravation/mitigation determination is resolved. These factors establish a mandatory public policy for aggravation and mitigation which the trial courts must respect. In this way, the Judicial Council has improperly taken on the role of legislating in an area outside its constitutional functions as defined by article VI, section 6 of the state Constitution.

The Judicial Council under article VI, section 6 may "perform other functions prescribed by statute." However, the Legislature may not delegate general policy decisions to nonrepresentative bodies. (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 816-817 [114 Cal.Rptr. 577, 523 P.2d 617].) This limitation on legislative delegation is not merely the vestigial remainder of the largely repudiated "nondelegation" doctrine. (See *Dougherty* v. *Austin* (1892) 94 Cal. 601, 606-607 [28 P. 834, 29 P. 1092].) It is a requirement

which the courts enforce "to preserve the representative character of the process of reaching legislative decision." (*Kugler v. Yocum* (1968) 69 Cal.2d 371, 375-384 [71 Cal.Rptr. 687, 445 P.2d 303]; see generally Stewart, *The Reformation of American Administrative Law* (1975) 88 Harv.L.Rev. 1667, 1671-1681.)

The real issue is whether the Legislature conferred upon the Judicial Council "the unrestricted authority to make fundamental policy determinations." (*Clean Air Constituency v. California State Air Resources Bd., supra*, 11 Cal.3d at p. 816.) If so, an unconstitutional delegation of power has occurred. (*Ibid.*)

The statute which delegates to the Judicial Council the task of writing sentencing criteria, Penal Code section 1170.3, does not on its face provide the necessary "adequate yardstick" for the guidance of the council.[1] (See *Clean Air Constituency v. California State Air Resources Bd., supra*, 11 Cal.3d at p. 817.) There is no way in which a judicial review of the council's criteria can be undertaken to determine if they reflect general legislative policy as it pertains to the classification of crimes in terms of mitigation or aggravation of punishment. Such a policy cannot be gleaned from Penal Code section 1170.3. What the Legislature thinks about the adequacy of any of the factors in rules 421 and 423 to justify the imposition of an upper or lower term is not capable of ascertainment.

The majority's attempt to find the necessary standard by reference to Penal Code section 1170, subdivision (b) is tautological. Section 1170, subdivision (b) merely states that the sentencing court shall impose the middle of three terms unless there are circumstances in aggravation or mitigation. The majority's reliance on this provision misses the real point. Which of the many factors concerning an offense or an offender justify the imposition of different sentences upon offenders who are guilty of the same crime? Whether the numerous factors defined by the

---

[1]Penal Code section 1170.3, subdivision (a) provides: "The Judicial Council shall seek to promote uniformity in sentencing under Section 1170, by:

"(a) The adoption of rules providing criteria for the consideration of the trial judge at the time of sentencing regarding the court's decision to:

"(1) Grant or deny probation.

"(2) Impose the lower or upper prison term.

"(3) Impose concurrent or consecutive sentences.

"(4) Consider an additional sentence for prior prison terms.

"(5) Impose an additional sentence for being armed with a deadly weapon, using a firearm, an excessive taking or damage, or the infliction of great bodily injury."

Judicial Council are consistent with the Legislature's will is no more answerable by reference to section 1170, subdivision (b) than by reference to section 1170.3.

In marked contrast to this general delegation is the Legislature's approach to another discretionary judicial decision, the detention of minors who are taken into custody and who are the subjects of petitions alleging a violation of law (Welf. & Inst. Code, § 602). In this area, the Judicial Council has been directed by statute to make rules to govern "practice and procedure." (Welf. & Inst. Code, § 265.) However, the Legislature has provided *by statute* the basic grounds which must exist before a minor may be detained. (Welf. & Inst. Code, § 635.)[2] In that statute the Legislature provided the necessary guidance to the council. By so doing, it avoided a general delegation. The Judicial Council is not precluded from adopting a rule which is consistent with the legislative determination of what grounds are sufficient to justify a minor's detention. (See Cal. Rules of Court, rule 1327.) If challenged, the propriety of the factors in rule 1327 can be judged by reference to Welfare and Institutions Code section 635.

Contrast this with Penal Code sections 1170.3 or 1170, subdivision (b), which give no basis on which to measure whether rules 421 and 423 meet the Legislature's intent. The proper body has not made the admittedly difficult decisions as to which grounds are to be considered to justify the imposition of an aggravated or mitigated term of imprisonment.

---

[2]Welfare and Institutions Code section 635 provides: "The court will examine such minor, his parent, guardian, or other person having relevant knowledge, hear such relevant evidence as the minor, his parent or guardian or their counsel desires to present, and, unless it appears that such minor has violated an order of the juvenile court or has escaped from the commitment of the juvenile court or that it is a matter of immediate and urgent necessity for the protection of such minor or reasonably necessary for the protection of the person or property of another that he be detained or that such minor is likely to flee to avoid the jurisdiction of the court, the court shall make its order releasing such minor from custody.

"The circumstances and gravity of the alleged offense may be considered, in conjunction with other factors, to determine whether it is a matter of immediate and urgent necessity for the protection of the minor or reasonably necessary for the protection of the person or property of another that the minor be detained."

In contrast to the six-year difference between some mitigated and aggravated terms of imprisonment, detention authorized by this statute may not extend more than fifteen judicial days past the minor's detention hearing. (*In re Robin M.* (1978) 21 Cal.3d 337 [146 Cal.Rptr. 352, 579 P.2d 1].)

While the Legislature's reliance upon Judicial Council expertise is completely proper in enacting statutes which set forth the criteria to be used for a determination of aggravation or mitigation, a complete delegation to the Judicial Council of the power to formulate that policy is an unconstitutional delegation of power.

## II.

A separate issue in this case concerns the proper standards for determining when remand is necessary in cases where sentencing error has occurred. This issue is an important and recurring one and has spawned a number of Court of Appeal decisions.

Whether a judgment must be reversed and a cause remanded for resentencing due to error by the trial court in relying upon improper or unsupported factors in aggravation, or in refusing to find supported mitigating factors, must be decided in accord with the *Watson* test for prejudicial error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; Cal. Const., art. VI, § 13.) That is, the reviewing court must determine if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

In determining the existence of *Watson* error in the sentencing context, however, it must be remembered that Penal Code section 1170, subdivision (b) creates a statutory preference for imposition of the middle term.[3] Also, rule 439(b) states that "[s]election of the upper term is justified only if . . . circumstances in aggravation are established by a preponderance of the evidence and outweigh circumstances in mitigation."

The fact that a greater number of aggravating than mitigating circumstances may be established is not determinative. It is the weight that the sentencer accords to the factors which governs whether imposition of the upper or lower term is justified. This requires "[a] quantitative and *qualitative* analysis" of multiple factors. (*People* v. *Lambeth* (1980) 112 Cal.App.3d 495, 501 [169 Cal.Rptr. 193], original italics.)

---

[3]Penal Code section 1170, subdivision (b) provides in pertinent part: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime."

The statutory preference for imposition of the middle term, when coupled with the requirement that aggravating circumstances must outweigh mitigating circumstances before imposition of the aggravated term is proper, creates a presumption. Consideration of improper or unsupported aggravating factors, or failure to find mitigating circumstances which are present, prejudices an individual sentenced to the upper term. Many Court of Appeal decisions have so held, remanding for sentencing when an improper factor was considered, even where other aggravating and no mitigating circumstances were present, "because it could not be determined whether the twice-used fact was determinative for the sentencing court." (*People* v. *Smith* (1980) 101 Cal.App.3d 964, 968 [161 Cal.Rptr. 787]; accord, *People* v. *Lawson* (1980) 107 Cal.App.3d 748 [165 Cal.Rptr. 764]; *People* v. *Garfield* (1979) 92 Cal.App.3d 475 [154 Cal.Rptr. 869]; *People* v. *Roberson* (1978) 81 Cal.App.3d 890 [146 Cal.Rptr. 777].) This rule is particularly apt because even if there were remaining valid factors "sufficient to find aggavation, the court is not bound to do so." (*People* v. *Roberson, supra*, 81 Cal.App.3d at p. 893.)

Also, where a reviewing court finds that a properly established factor in mitigation was rejected by the sentencing court, and an improper or unsupported factor in aggravation was utilized, remand has been ordered. (*People* v. *Covino* (1980) 100 Cal.App.3d 660, 670-672 [161 Cal.Rptr. 155].) Any other standard which merely determines if the imposed sentence would be wholly unsupported or arbitrary in the absence of error does not square with the *Watson* test for prejudice.

Since the imposition of the upper term in the instant case was based on at least one unsupported aggravating factor, as the majority recognize (maj. opn. at p. 714), a remand for sentencing is required. "Appellant is entitled to a new hearing on the question of circumstances in mitigation and aggravation at which all the mitigating factors are expressly considered and from which [unsupported facts are] excluded from consideration." (*People* v. *Covino, supra*, 100 Cal.App.3d at p. 672.)

Mosk, J., concurred.