Filed 7/28/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CRIMINAL JUSTICE LEGAL FOUNDATION et al., | C100274 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2022-8000-3807-CU-WM-GDS) |
| v. | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Jennifer K. Rockwell, Judge.  Remanded.

Criminal Justice Legal Foundation and Kent S. Scheidegger for Plaintiffs and Appellants.

Thien Ho, District Attorney, and David R. Boyd, Deputy District Attorney, as Amicus Curiae on behalf of Plaintiffs and Appellants.

Rob Bonta, Attorney General, Sara J. Romano, Assistant Attorney General, and Amanda J. Murray and Gregory J. Marcot, Deputy Attorney Generals, for Defendants and Appellants.

1

Prison Law Office and Margot Mendelson, Lily Harvey, and Heather MacKay as Amicus Curiae on behalf of Defendants and Respondents.

In 2016, California voters approved Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Cal. Const., art. I § 32). This initiative measure amended the California Constitution to give the California Department of Corrections and Rehabilitation (the department) the authority, "notwithstanding . . . any other provision of law," to award credits for good behavior and for approved rehabilitative or educational achievements. It also directed the department to adopt regulations in furtherance of such authority.

The department adopted regulations that, as relevant here, (1) award credits beyond statutory limits and (2) use credits to advance all indeterminately-sentenced inmates' minimum eligible parole dates (the regulations). The Criminal Justice Legal Foundation and several family members of crime victims (collectively, petitioners) challenged the validity of these regulations through a petition for writ of mandate. The trial court denied the writ in part and granted it in part, invalidating the department's regulations to the extent they allow the use of credits to advance an indeterminately-sentenced inmate's minimum eligible parole date. Both the department and petitioners appeal.

On appeal, the department contends the regulations advancing indeterminately-sentenced inmates' minimum eligible paroles dates with credits are consistent with the plain language of Proposition 57 and reasonably necessary to effectuate Proposition 57's purpose. To the extent the regulations contradict other statutes, those statutes are superseded because Proposition 57 authorizes the department to adopt regulations "notwithstanding any other provision of law." Petitioners contend the entirety of their writ should have been granted because Proposition 57 does not authorize the department to adopt regulations that award credits beyond statutory limits and concluding otherwise

2

is an impermissible delegation of legislative power, resulting in a constitutional revision that cannot be done by initiative process.

We hold that (1) Proposition 57 properly removed statutory restraints on the department's authority to award credits, allowing the regulations to supersede contrary statutes; and (2) the department may use credits to advance indeterminately-sentenced inmates' minimum eligible parole dates only if permitted by existing law because both the plain language and ballot materials of Proposition 57 are silent on this issue.  The matter is remanded, and the trial court is directed to modify the writ of mandate and enter a modified judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*A.      Proposition 57*

In 2011, the United States Supreme Court affirmed a federal district court order directing California to reduce its prison population after concluding that severe overcrowding was the primary cause of the state's unlawful treatment of prisoners. (*Brown v. Plata* (2011) 563 U.S. 493, 502.)  The district court later refused to vacate the prison population reduction order because, among other things, the state had not achieved a " 'durable remedy' " to the overcrowding problem.  (*Coleman v. Brown* (E.D.Cal. 2013) 922 F.Supp.2d 1004, 1008, 1043.)[1]

Against this backdrop, the voters passed Proposition 57 to "enable[] inmates to be released earlier on parole by . . . giving the [d]epartment authority to award credits to inmates for good behavior."  (*O.G. v. Superior Court* (2021) 11 Cal.5th 82, 95, citing Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 3, p. 141 (2016 Voter Guide).)  The change "provided a ' "durable remedy" ' " that would decrease the prison population [citation] and thereby diminish the likelihood that federal courts would

---

[1]  We deny both the department's and petitioner's requests for judicial notice as unnecessary to our decision.

3

'indiscriminately release[e] prisoners.' " (*O.G.*, at p. 95, citing 2016 Voter Guide, *supra*, text of Prop. 57, § 2, p. 141.)

Proposition 57 added section 32 to article I of the California Constitution (section 32). It provides in pertinent part: "(a) The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding . . . any other provision of law: [¶] . . . [¶] (2) Credit Earning: [The department] shall have authority to award credits earned for good behavior and approved rehabilitative or educational achievements. [¶] (b) [department] shall adopt regulations in furtherance of these provisions."

Pursuant to section 32, the department promulgated the regulations to (1) award good conduct credit, milestone completion credit, rehabilitative achievement credit, and educational merit credit to most inmates, as well as credits to inmates housed in minimum security facilities (Cal. Code Regs., tit. 15, §§ 3043.2, subds. (a), (b)(5), 3043.3, 3043.4, 3043.5); and (2) permit the use of credit to advance an indeterminately-sentenced inmate's minimum eligible parole date. (Cal. Code Regs., tit. 15, §§ 3043, subd. (a), 3043.2, subd. (b), 3043.3, subd. (c), 3043.4, subd. (b), 3043.5, subd. (b).)

B.     *Trial court proceedings*

Petitioners filed a writ of mandate and complaint for declaratory and injunctive relief in the trial court challenging the regulations on the grounds they (1) award credits to some inmates at a rate higher than the statutory limits imposed by the Penal Code; (2) award credits to inmates who are otherwise ineligible to earn credits under the Penal Code; (3) award extra good conduct credit to inmates assigned to a minimum security facility without constitutional or statutory authorization; and (4) allow the use of credits to advance indeterminately-sentenced inmates' minimum eligible parole dates in conflict with the Penal Code.

On December 13, 2023, the trial court issued a ruling granting the petition in part, finding that Proposition 57 did not give the department the authority to advance an

4

indeterminately-sentenced inmate's minimum eligible parole date with credit. The trial court denied the petition in all other respects.

The department filed a notice of appeal on January 11, 2024. The trial court entered the judgment on January 26, 2024. Petitioners filed their cross-appeal on February 2, 2024.[2]

DISCUSSION

I

*Standard of Review*

We generally give "presumptive value to a public agency's interpretation of a statute within its administrative jurisdiction because the agency may have 'special familiarity with satellite legal and regulatory issues,' leading to expertise expressed in its interpretation of the statute." (*Pacific Bell Wireless, LLC v. Public Utilities Com.* (2006) 140 Cal.App.4th 718, 729.) But " 'the general rule of deference to interpretations of statutes subject to the regulatory jurisdiction of agencies does not apply when the issue is the scope of the agency's jurisdiction.' " (*PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1194.) When reviewing an agency's interpretation of a statute that defines the reach of its power, we apply the independent judgment standard set forth in *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1. (*New Cingular Wireless PCS, LLC v. Public Utilities Com.* (2016) 246 Cal.App.4th 784, 807.) That is, we "independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning . . . . Depending on the context, [the agency's interpretation] may be helpful, enlightening, even convincing. It may

---

[2] We had previously denied petitioners' motion to dismiss the appeal, which argued the December 13, 2023 ruling was a nonappealable order. Petitioners renew the challenge in their responding brief. Given petitioners' cross-appeal, we deem the trial court's December 13, 2023 ruling to be the judgment to promote judicial economy. (See *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 654.)

5

sometimes be of little worth." (*Yamaha*, at pp. 7-8.) These principles apply when an agency has promulgated regulations to give force to a constitutional provision. (*In re Mohammad* (2022) 12 Cal.5th 518, 528-529.) Because this inquiry poses a question of law, we review the trial court's decision de novo. (*Id.* at p. 529.)

In construing constitutional provisions, including those enacted through voter initiatives, "[o]ur primary concern is giving effect to the intended purpose of the provisions at issue. [Citation.] In doing so, we first analyze provisions' text in their relevant context, which is typically the best and most reliable indicator of purpose. [Citations.] We start by ascribing to words their ordinary meaning, while taking account of related provisions and the structure of the relevant statutory and constitutional scheme. [Citations.] If the provisions' intended purpose nonetheless remains opaque, we may consider extrinsic sources, such as an initiative's ballot materials. [Citation.] Moreover, when construing initiatives, we generally presume electors are aware of existing law. [Citation.] Finally, we apply independent judgment when construing constitutional and statutory provisions." (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933-934.)

II

*Credits*

Petitioners contend the regulations improperly award credits beyond the limits set forth in the Penal Code. They urge us to construe section 32 as authorizing the department to award credits only within the existing statutory limits to avoid an unconstitutional delegation of legislative power. We conclude section 32 properly delegates to the department the authority to award credits beyond existing statutory limits.

A.    *Section 32*

Section 32 states in pertinent part: "(a) The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of

6

prisoners by federal court order, notwithstanding . . . any other provision of law [¶] . . . [¶] (2) Credit Earning: [The department] shall have authority to award credits earned for good behavior and approved rehabilitative or educational achievements. [¶] (b) [The department] shall adopt regulations in furtherance of these provisions."

The phrase "notwithstanding any other provision of law" has "special interpretative importance." (*Faulder v. Mendocino County Bd. of Supervisors* (2006) 144 Cal.App.4th 1362, 1373.) When a statute employs this phrase, "it is generally acknowledged that its 'broad and unambiguous scope' operates to override[] the application, if any, of [contradictory law].' " (*Timlick v. National Enterprise Systems, Inc.* (2019) 35 Cal.App.5th 674, 686; accord, *Los Angeles County Employees Retirement Assn. v. County of Los Angeles* (2024) 102 Cal.App.5th 1167, 1213 [voters intended for constitutional amendment to override contrary law by using "notwithstanding any other provision of law" in Proposition 162].) "[I]n enabling [an administrative agency] to enact rules . . . that shall apply '[n]otwithstanding any other provision of law,' the Legislature intended that such rules override other provisions." (*Isaak v. Superior Court* (2022) 73 Cal.App.5th 792, 799; accord, *In re Greg F.* (2012) 55 Cal.4th 393, 406.) Such a grant of power practically "remove[s] any restraints of statutory consistency" on the agency's rules promulgated under the statute. (*Isaak*, at p. 797; see also *Gerard v. Orange Coast Memorial Medical Center* (2018) 6 Cal.5th 443, 454 ["the 'notwithstanding' phrase undoubtedly gives broad powers to" administrative agency].) Our Supreme Court has held that the Judicial Council's family law rules "supersede contrary statutes" because the rules were adopted pursuant to a Civil Code section authorizing the Judicial Council to provide such rules "notwithstanding any other provision of law." (*In re Marriage of McKim* (1972) 6 Cal.3d 673, 678, fn. 4; *People v. Wright* (1982) 30 Cal.3d 705, 712 [recognizing *McKim*].) Similarly, by giving counties the power to adopt restrictions on eligibility for general assistance benefits "notwithstanding any other provision of law," "the Legislature intended to give counties

7

authority to override the broad mandate of [contrary statute] in specified circumstances." (*Watkins v. County of Alameda* (2009) 177 Cal.App.4th 320, 344.)

Here, by granting the department the power to award credits for good behavior and approved rehabilitative or educational achievements "notwithstanding . . . any other provision of law" and by directing the department to "adopt regulations in furtherance of" such power, the voters intended for the regulations to override contrary statutes. Having reached this conclusion, we find it unnecessary to address petitioners' implied repeal argument. (See *Watkins v. County of Alameda*, *supra*, 177 Cal.App.4th at p. 344 [the implied repeal argument does not make sense where the Legislature intended to give an agency the authority to override contrary statute].) Because the credits awarded under the regulations are constitutionally authorized, we also reject petitioners' argument that the regulations conflict with section 28, subdivision (f)(5) of article I of the California Constitution, which they allege require sentences to be reduced by only authorized credits.[3]

Petitioners contend section 32 does not allow the regulations to supersede contrary statutes because subdivision (b), which directs the department to adopt rules in furtherance of subdivision (a), "lies outside of the scope of the 'notwithstanding' clause" in subdivision (a). But petitioners point to a distinction without a difference. Read together, section 32 directs the department to "adopt regulations in furtherance" of the department's "authority to award credits" "notwithstanding . . . any other provision of

---

[3] Section 28, subdivision (f)(5) of article I of the California Constitution provides in full: "Truth in Sentencing. Sentences that are individually imposed upon convicted criminal wrongdoers based upon the facts and circumstances surrounding their cases shall be carried out in compliance with the courts' sentencing orders, and shall not be substantially diminished by early release policies intended to alleviate overcrowding in custodial facilities. The legislative branch shall ensure sufficient funding to adequately house inmates for the full terms of their sentences, except for statutorily authorized credits which reduce those sentences."

8

law." (§ 32, subds. (a)(2), (b).)  Because the department's authority under section 32 may exceed statutory limits, the regulations necessarily must supersede existing law to further such authority.

Petitioners also contend section 32, subdivision (a)(2) simply affirms the department's general authority to award credits under existing law and does not authorize the department to award credits in violation of statutes.  As we discuss next, this interpretation contradicts voters' intent to allow the department to "award increased credits to those currently eligible for them and credits to those currently ineligible." (2016 Voter Guide, *supra*, analysis of Prop. 57 by Legis. Analyst, p. 56.)

The Legislative Analyst's analysis informed voters that existing state law "allows [the department] to award credits under certain conditions to prison inmates that reduce the time they must serve in prison . . . Over two-thirds of inmates are eligible to receive credits."  (2016 Voter Guide, *supra*, analysis of Prop. 57 by Legis. Analyst, at p. 55.) The analysis proceeded to advise voters that the measure "changes the State Constitution to give [the department] the authority to award credits to inmates for good behavior and approved rehabilitative or educational achievements.  [The department] could award increased credits to those currently eligible for them and credits to those currently ineligible.  As a result, [the department] could increase the amount of credits inmates can earn, which would reduce the amount of time served in prison." (*Id.* at p. 56.)  The voters thus understood from the analysis that Proposition 57 would give the department the authority to award more credits than allowed under existing law, as well as to award credits to inmates who were currently ineligible to earn credits.

Petitioners' reliance on *In re Friend* (2021) 11 Cal.5th 720 is misplaced.  There, our Supreme Court held that Proposition 66's limitations on successive habeas corpus petitions did not apply to claims based on newly available evidence and newly decided case law.  (*Friend*, at pp. 723-724.)  It observed that nothing in the ballot materials "brought to voters' attention the specific problem of claims that could not reasonably

9

have been brought in a prior petition." (*Id.* at p. 741.) Moreover, limiting those claims would "threaten[] the guarantee of fair access to courts . . . and in so doing" raise significant constitutional doubt. (*Id.* at p. 739.) The "significant constitutional doubts" and "the absence of any substantial evidence to the contrary" led our Supreme Court to conclude the voters did not intend to place limitations on claims that could not have reasonably been raised earlier. (*Id.* at p. 741.)

Here, on the other hand, the voters were told that (1) existing law limited the department's authority to award credits to inmates; and (2) section 32 would allow the department to "award increased credits to those currently eligible for them and credits to those currently ineligible." (2016 Voter Guide, *supra*, analysis of Prop. 57 by Legis. Analyst, pp. 54-56.) Thus, unlike *Friend*, the ballot materials here expressly directed the voters' attention to section 32's expansion of the department's authority to award credits to all inmates regardless of their ability to earn credits under existing law. And as discussed below, such an expansion raises no constitutional doubt. The voters knew section 32 would allow the department to award credits beyond statutory limits and voted for it.

## B.    *Delegation of legislative power*

Petitioners contend that interpreting section 32 as authorizing the department to adopt regulations that award credits beyond statutory limits would lead to an unconstitutional delegation of legislative power to the department. We disagree.

"The doctrine prohibiting delegations of legislative power does not invalidate reasonable grants of power to an administrative agency, when suitable safeguards are established to guide the power's use and to protect against misuse." (*People v. Wright*, *supra*, 30 Cal.3d at p. 712.) "An unconstitutional delegation of authority occurs only when a legislative body (1) leaves the resolution of fundamental policy issues to others or (2) fails to provide adequate direction for the implementation of that policy." (*Carson Mobilehome Park Owners' Assn. v. City of Carson* (1983) 35 Cal.3d 184, 190.) The

10

requisite guidance to the power's use and safeguards against misuse may both be implied by the statutory purpose. (*Newsom v. Superior Court* (2021) 63 Cal.App.5th 1099, 1115; *Wilkinson v. Madera Community Hospital* (1983) 144 Cal.App.3d 436, 442.) " 'Only in the event of a total abdication of power, through failure either to render basic policy decisions or to assure that they are implemented as made, will this court intrude on legislative enactment because it is an "unlawful delegation." ' " (*Newsom*, at p. 1114.)

Here, the voters knew the unconstitutional conditions in the state's prisons led federal courts to order the state to reduce its prison population. (2016 Voter Guide, *supra*, argument in favor of Prop. 57, p. 58.) They were warned that, without any meaningful changes, Californians would "risk a court-ordered release of dangerous prisoners." (*Ibid.*) Thus, voters made the fundamental policy decision to reduce prison population by changing existing law on credits and parole consideration. (See *O.G. v. Superior Court of Ventura County*, *supra*, 11 Cal.5th at pp. 94-95.) These changes provided a durable remedy to comply with federal court order and thus diminished the likelihood of indiscriminate releases by federal courts. (*Id.* at p. 95.) To implement this policy, the voters gave the department the authority, "notwithstanding . . . any other provision of law," to "award credits earned for good behavior and approved rehabilitative or educational achievements," and to fill in the details by adopting the regulations. (§ 32, subds. (a)(2), (b).)

Petitioners argue that the award of credits is a fundamental policy decision because "[t]he different purposes of punishment often pull policy in different directions, and views of their relative importance have changed over time and will continue to change." But in 2016, the voters balanced punishment with prison conditions and the perceived threat of indiscriminate release of prisoners by federal courts. And they decided the department shall have more power to award credits.

The stated purposes of section 32 sufficiently guide the department to award credits in a manner that promotes public safety and enhances rehabilitation. (See

11

*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 510 ["a general welfare standard is a sufficient guideline to enable an agency to act constitutionally"].) Section 32 also safeguards against the department's potential arbitrary or abusive award of credits. The department is limited to awarding credits for "good behavior and approved rehabilitative or educational achievements." (§ 32, subd. (a)(2).) It cannot create credit-earning programs unrelated to an inmate's behavior, rehabilitation, or education. Inmates who fail to rehabilitate in prison and thus have a high risk of reoffending would not be able to earn credits under the regulations. (See, e.g., Cal. Code Regs., tit. 15, §§ 3043, subd. (a) [only inmates who comply with the department's rules and regulations and perform their assigned duties are eligible to earn good conduct credit], 3043.3, subd. (c), 3043.4, subd. (b), 3043.5, subd. (b) [inmates eligible for good conduct credits are also eligible to earn milestone completion, rehabilitative achievement, and educational merit credits].) More importantly, the department must "avoid the release of prisoners by federal court order." (§ 32, subd. (a).) Thus, it cannot award credits in an arbitrary manner, effectively leading to the indiscriminate release of prisoners that the voters feared the federal court would do. Finally, the appointment of the department to implement section 32 provides an inherent safeguard because the department's expertise in prison management demonstrates it is " 'an agency that the Legislature can expect will reasonably perform its function.' " (*Monsanto Co. v. Office of Environmental Health Hazard Assessment* (2018) 22 Cal.App.5th 534, 595-560.) "[I]t would be questionable, if not unwise, to reject the experience and qualifications of the agency and insist that the Legislature impose the detailed criteria when it chose to" adopt a new credit earning scheme. (*People v. Wright*, *supra*, 30 Cal.3d at p. 713.)

Having concluded the delegation of legislative power is proper here, we reject petitioners' contention that such delegation effectuated a qualitative constitutional revision. And no separation of powers violation arises from the voters' exercise of initiative power to remove statutory limitations on the department's authority to award

credits for good behavior and approved rehabilitative or educational achievements. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1044-1045.)

III

*Minimum Eligible Parole Dates*

Although we conclude above that the department has broad authority to award credits, its power to apply those credits is a different issue. Petitioners contend section 32 does not authorize the department to use credits to advance indeterminately-sentenced inmates' minimum eligible parole dates in conflict with existing law. We agree.

Credits awarded by the department affect determinately-sentenced and indeterminately-sentenced inmates differently. Determinately-sentenced inmates' prison terms are reduced by credits. (Pen. Code, § 2933, subd. (a).) Credits received by indeterminately-sentenced inmates "go towards advancing only their minimum eligible [parole] date[s], not their actual release from prison." (*In re Jenkins* (2010) 50 Cal.4th 1167, 1179.) These inmates cannot be paroled until they have served the greater of: "(1) A term of at least seven calendar years. (2) A term as established pursuant to any other law that establishes a minimum term or minimum period of confinement under a life sentence before eligibility for parole." (Pen. Code, § 3046, subd. (a).) Among such "other law[s]" are Penal Code section 190, subdivision (e) that "bars a murderer from earning any postsentence conduct credit to reduce" his or her minimum eligible parole date (*In re Maes* (2010) 185 Cal.App.4th 1094, 1110), as well as other Penal Code sections that "specially allow credits to apply in some indeterminate life terms with parole minimums . . . effectively allows an earlier [minimum eligible parole date]." (*People v. Stofle* (1996) 45 Cal.App.4th 417, 421; see, e.g., Pen. Code, §§ 191.5, subd. (d), 217.1, subd. (b), 667.7, subd. (a)(1), 667.75.) Thus, existing law permits the department to use credits to advance some indeterminately-sentenced inmates' minimum eligible parole dates. But the regulations allow the department to do so for all inmates.

13

(Cal. Code Regs., tit. 15, §§ 3043, subd. (a), 3043.2, subd. (b), 3043.3, subd. (c), 3043.4, subd. (b), 3043.5, subd. (b), 3043.6, subd. (b).) We next consider whether the department overstepped its authority under section 32.

Section 32 is silent as to the department's authority to use credits to advance indeterminately-sentenced inmates' minimum eligible parole dates. We thus turn to ballot materials to ascertain the voters' intent. (See *Professional Engineers in California Government v. Kempton*, *supra*, 40 Cal.4th at p. 1037 [where initiative language is ambiguous, we consider ballot summaries and arguments to determine the voters' intent].)

The ballot materials did not mention the department's ability to use credits to advance minimum eligible parole dates. And the concept of indeterminate sentencing appeared only in background information. The Legislative Analyst explained to the voters that "[u]nder indeterminate sentencing, individuals are sentenced to prison for a term that includes a minimum but no specific maximum, such as 25-years-to life." (2016 Voter Guide, *supra*, analysis of Prop. 57 by Legis. Analyst, p. 54.) "After an individual serves the minimum number of years required for an indeterminate sentence, the State Board of Parole Hearings . . . conducts a parole consideration hearing to determine whether the individual is ready to be released from prison." (*Ibid.*) As to the use of credits, the analysis stated: "State law limits the amount that inmate sentences can be reduced through credits. For example, more than half of inmates eligible for credits can only reduce their sentences by 15 percent because they have a conviction for a violent offense." (*Id.*, at p. 55.) The proposed changes would allow the department to "increase the amount of credits inmates can earn, which would reduce the amount of time served in prison." (*Id.* at p. 56.) This information advised the voters that Proposition 57 would reduce an inmate's time in prison by allowing the department to award them more credits. But it said nothing about advancing an indeterminately-sentenced inmate's minimum eligible parole date with credits.

14

Although proponents and opponents of Proposition 57 hotly debated whether Proposition 57 would allow early parole of violent felons such as murderers and rapists, they did not assert these felons were all sentenced indeterminately. (2016 Voter Guide, *supra*, argument in favor of and against Prop. 57, pp. 58-59; see, e.g., Pen. Code, §§ 190 [murder is punished by indeterminate sentence], 264, subd. (a) [rape is be punished by a determinate term of three, six, or eight years].) The focus was on the type of crime the inmates committed, not the type of sentence they received. Moreover, a grant of parole — the center of the proponents and opponents' debate — is not the same as the minimum eligible parole date. As the department points out, "[e]arned credits only affect the minimum eligible parole date — they would not authorize a grant of parole, or directly impact an indeterminately sentenced person's release date." The department contends the voters knew that Proposition 57 would allow the use of credit to advance minimum eligible parole dates for indeterminately-sentenced inmates because opponents warned them the measure would reduce the sentences for murderers. But the proponents specifically discredited opponents' warning, arguing the measure did not authorize parole for violent offenders. (2016 Voter Guide, *supra*, rebuttal to argument against Prop. 57, p. 59.) And the text of Proposition 57 makes no mention of the type of sentence received by violent offenders. (See *In re Gadlin* (2020) 10 Cal.5th 915, 942 ["when an argument for or against a ballot measure conflicts with the measure's plain text, the text must govern the measure's interpretation"].) In sum, nothing in the ballot materials brought to the voters' attention the department's authority to advance indeterminately-sentenced inmates' minimum eligible parole dates with credits.

" ' "We cannot presume that . . . the voters intended the initiative to effect a change in law that was not expressed or strongly implied in either the text of the initiative or the analyses and arguments in the official ballot pamphlet." ' " (*In re Koenig* (2023) 97 Cal.App.5th 558, 566.) When Proposition 57 says nothing about whether the department may use credits to advance an indeterminately-sentenced inmate's minimum

15

eligible parole date, "it does not replace the existing law on these issues." (*Koenig*, at p. 566.) Accordingly, the regulations are void to the extent they conflict with existing law, such as Penal Code section 190, to advance an indeterminately-sentenced inmate's minimum eligible parole date with credits. (*Terhune v. Superior Court* (1998) 65 Cal.App.4th 864, 873 [administrative action is void if it is not authorized by or is inconsistent with acts of the Legislature].) But we cannot say the regulations flatly conflict with Penal Code section 3046, as petitioners suggest, because section 3046 looks to "other law" in deciding the minimum term and some of them allow the use of credits to advance the minimum eligible parole date. Indeed, petitioners concede "if the statute setting the minimum allows the minimum to be reduced by credits, then it can be."

We reject the department's claim that the "notwithstanding" language in section 32, subdivision (a) allows it to use credits to advance indeterminately-sentenced inmates' minimum eligible parole dates. To be sure, the language gives the department broad power to award credits. But awarding credits and applying the credits awarded are two different things, and section 32 is silent on the latter.

## DISPOSITION

The matter is remanded to the trial court. On remand, the trial court is directed to (1) modify the writ of mandate invalidating the regulations to the extent they allow the department to advance indeterminately-sentenced inmates' minimum eligible parole dates with credits in conflict with other statutes; and (2) enter a modified judgment. Each party shall bear their own costs on appeal.

/s/
MESIWALA, J.

We concur:

/s/
HULL, Acting P. J.

/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.