*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0213p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

C.T.H., aka L.T.E.,

        *Defendant-Appellant.*

No. 10-1487

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 10-20044-001—Sean F. Cox, District Judge.

Argued: January 11, 2012

Decided and Filed: July 11, 2012

Before: KETHLEDGE and STRANCH, Circuit Judges; GWIN, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Randall C. Roberts, Ann Arbor, Michigan, for Appellant. Robert W. Haviland, UNITED STATES ATTORNEY'S OFFICE, Flint, Michigan, for Appellee. **ON BRIEF:** Randall C. Roberts, Ann Arbor, Michigan, for Appellant. Robert W. Haviland, UNITED STATES ATTORNEY'S OFFICE, Flint, Michigan, for Appellee.

———————————

## OPINION

———————————

KETHLEDGE, Circuit Judge. The defendant in this case, whom we refer to here as CTH, pled guilty in federal court to an act of juvenile delinquency in violation of 18 U.S.C. § 5032. The charged act was possession of heroin with intent to distribute it near a Speedway gas station in Flint, Michigan. CTH was 16 years old when arrested

———————————

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

for that conduct.  The district court held a dispositional (*i.e.*, sentencing) hearing in which it found by a preponderance of the evidence that CTH was responsible for the distribution of 647 grams of heroin.  The court then sentenced CTH to five years' "official detention."  *See generally* 18 U.S.C. § 5037.

CTH's principal argument here, as it was in the district court, is that the government was required to prove beyond a reasonable doubt, rather than just by a preponderance, the existence of any fact that increased the statutory-maximum period of his official detention.  Because of a quirk in the federal juvenile-delinquency statute, the maximum period of a juvenile's official detention is the lesser of five years or "the maximum of the guideline range . . . applicable to an otherwise similarly situated adult defendant[.]"  *Id.*  § 5037(c)(2)(A)(ii).  Thus, a juvenile's maximum period of official detention is equal to the guidelines maximum of a similarly situated adult, up to a ceiling of five years.  Up to that ceiling, therefore, any fact that increases the guidelines maximum for a similarly situated adult serves to increase the statutory-maximum period of official detention for the juvenile.  (The guidelines otherwise do not apply to juveniles.  *See* U.S. Sentencing Guidelines § 1B1.12.)

The district court's finding that CTH was responsible for 647 grams of heroin undisputedly had that effect here.  Absent that finding, the guidelines maximum for a similarly situated adult—and thus CTH's maximum period of detention—might have been as low as 12 months.  With the finding, his maximum period of detention—and as it turned out, his actual sentence—was 60 months.  CTH argues, therefore, that the district court was required to make the drug-quantity finding beyond a reasonable doubt.

His argument has the virtue of syllogistic clarity.  "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  That standard undisputedly applies "during the adjudicatory stage of a delinquency proceeding[.]"  *Id.* at 368.  Meanwhile, in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" is treated as an element of the crime

itself, rather than as a sentencing factor, and hence must be "proved beyond a reasonable doubt." *Id*. at 490. Taken together, CTH says, these precedents mean that his drug-quantity finding—which increased his statutory-maximum penalty—was part of the "crime" with which he was charged, which under *Winship* the government was required to prove beyond a reasonable doubt.

The government, for its part, offers no path out of this box canyon of precedent. It observes that "trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement." *McKeiver v. Pennsylvania*, 403 U.S. 528, 545 (1971) (plurality opinion). It then asserts—as its only response to CTH's argument—that, "[s]ince there is no Sixth Amendment right to a jury determination of the facts necessary to prove a juvenile delinquent, the rationale of *Apprendi* does not apply to juvenile proceedings." Gov't Br. at 6. What, exactly, the "rationale of *Apprendi*" is, the government does not say.

In any event, the government's response is meritless. *Apprendi*'s practical effect was to expand the definition of a crime's elements to include "any fact that increases the penalty for a crime beyond the prescribed statutory maximum[.]" 530 U.S. at 490. And *Apprendi* did so for purposes of not one but two constitutional guarantees: the Sixth Amendment right to a jury trial *and* "the proscription of any deprivation of liberty without 'due process of law.'" *Id*. at 476. Thus, per *Apprendi*, "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Id*. at 490 (emphasis added; internal punctuation omitted). That part of *Apprendi*'s holding does not apply here, because (as the government points out) CTH did not have a Sixth Amendment right to a jury trial in his delinquency proceeding.

But *Apprendi* also held that "[i]t is equally clear that such facts"—meaning facts increasing a defendant's statutory-maximum sentence—"must be established by proof beyond a reasonable doubt." *Id.* (internal punctuation omitted). That part of *Apprendi*'s holding was based on the due-process right announced in *Winship*, which most certainly does apply here. (*Winship* itself concerned a juvenile-delinquency proceeding.) So the

government's response boils down to the assertion that CTH's argument under the Due Process Clause is meritless because he had no Sixth Amendment right to a jury trial in his delinquency proceeding. At best that response is a *non sequitur*. The government gives us no reason, therefore, not to apply *Apprendi*'s due-process holding to CTH's case.

A more persuasive argument might begin with the observation that juvenile proceedings provide a different context than do adult criminal trials, meaning perhaps that *Apprendi*'s definition of a crime's elements should apply in one context (adult cases) but not the other (juvenile ones). But even this argument cuts against the grain of the caselaw as it comes to us here. *Apprendi*'s due-process holding was rendered for the *very purpose* of defining the scope of *Winship*'s due-process guarantee. *See Apprendi*, 530 U.S. at 484. Specifically, *Winship* held that due process requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [a defendant] is charged." 397 U.S. at 364. *Apprendi* then held that the elements of a "crime"—*for purposes of the rule in* Winship—include every fact (other than the fact of a prior conviction) that increases a defendant's statutory maximum sentence. 530 U.S. at 490. Thus, what the government asks us to do, in essence, is to say that *Apprendi* defines the scope of *Winship*'s due-process guarantee only in adult prosecutions—notwithstanding that *Winship* itself concerned a juvenile prosecution.

The caselaw provides little basis for such contortions. To the contrary, the clear trend of the Supreme Court's precedents has been to apply *Apprendi* by its terms. Just recently, the Court said: "We have repeatedly affirmed this rule by applying it to a variety of sentencing schemes that allowed judges to find facts that increased a defendant's maximum authorized sentence." *S. Union Co. v. United States*, 132 S. Ct. 2344, 2350 (2012) (collecting cases). And in *Winship* itself—in concluding that "juveniles, like adults, are constitutionally entitled to proof beyond a reasonable doubt when they are charged with violation of a criminal law"—the Supreme Court reasoned: "The same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child." 397 U.S. at 365. That parity of

reasoning binds us here.  It is true, of course, that CTH was not innocent of possessing heroin with intent to distribute it in Flint, Michigan.  But whether he was innocent of responsibility for 647 grams of it is another matter.

The better reading of the Supreme Court's precedents is the one that CTH advocates here: any fact (other than the fact of a prior conviction) that increases a juvenile's statutory-maximum term of official detention must be proved beyond a reasonable doubt.  The district court's drug-quantity finding was such a fact.  That finding must therefore be made beyond a reasonable doubt.

The district court's March 16, 2010 dispositional order is vacated, and the case remanded for further proceedings consistent with this opinion.