Filed 11/13/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NELSON CHAVEZ ZEPEDA,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | A166159<br><br>(City & County of San Francisco Super. Ct. No. 21001875) |

This case presents several questions about Senate Bill No. 567 (2020–2021 Reg. Sess.) (Senate Bill 567). Senate Bill 567 amended Penal Code section 1170, subdivision (b)(2) (section 1170(b)(2))[1] to provide that, when a statute specifies three possible terms of imprisonment, the trial court cannot impose a sentence exceeding the middle term unless it finds that a longer sentence is justified by "circumstances in aggravation of the crime" and "the facts underlying those circumstances" have been stipulated to by the defendant or have been found true beyond a reasonable doubt by the jury at trial. Before Senate Bill 567, under the sentencing scheme in place since 2007, trial judges had the discretion to impose the lower, middle, or

---

[1] All further undesignated statutory references are to the Penal Code.

upper term of imprisonment based on their own assessment of which term best served the interests of justice, without making any factual findings. We are asked to decide the following issues:

First, does the phrase "circumstances in aggravation" in section 1170(b)(2) refer to the factors listed in California Rules of Court, rule 4.421 (rule 4.421), promulgated by the Judicial Council? Put another way, did the Legislature intend to delegate authority to the Judicial Council to define what constitutes circumstances in aggravation for the purpose of the jury's consideration under section 1170(b)(2)?

Second, if the Legislature did so intend, does such a delegation of authority violate the separation of powers or the nondelegation doctrine?

Third, are the aggravating circumstances in rule 4.421 unconstitutionally vague for use by a jury because they contain undefined qualitative terms like "particularly vulnerable," or "serious danger to society" (see rule 4.421(a)(3), (b)(1)) and require the jury to determine whether such an aggravating circumstance makes the commission of the offense " 'distinctively worse than the ordinary' "? (*People v. Black* (2007) 41 Cal.4th 799, 817 (*Black*).)

Fourth, must the factual allegations supporting the aggravating circumstances be supported by evidence at the preliminary hearing, and if so, were they supported by the evidence here?

We conclude that the phrase "circumstances in aggravation" does refer to the factors listed in rule 4.421, and that the Legislature has not violated the separation of powers by doing so. With respect to vagueness, although we reject the People's argument that the void-for-vagueness doctrine does not apply to aggravating circumstances, we find that the use of qualitative terms and the requirement that an aggravating circumstance make the commission

2

of the offense distinctively worse does not render the factors in rule 4.421 unconstitutionally vague. Finally, we conclude that the factual allegations supporting the aggravating circumstances do not need to be supported by evidence at the preliminary hearing.

## BACKGROUND

Petitioner Nelson Chavez Zepeda was charged in a felony complaint with the following five counts: (1) meeting a minor for lewd purposes (§ 288.4, subd. (b)); (2) arranging a meeting with a minor for lewd purposes (§ 288.4, subd. (a)(1)); (3) sending harmful matter to a minor (§ 288.2, subd. (a)(2)); (4) contacting a minor with the intent to commit a sexual offense (§ 288.3, subd. (a)); and (5) committing a lewd act upon a child (§ 288, subd. (a)). Chavez Zepeda is the minor's uncle.

On June 16, 2021, the trial court held a preliminary hearing. Following testimony and evidence, the court dismissed count 5 and held Chavez Zepeda to answer on the remaining four counts. An information was thereafter filed on these four counts. On January 1, 2022, Senate Bill 567's amendments to section 1170(b)(2) took effect.

In response to amended section 1170(b)(2), the prosecution filed a motion to amend the information to allege various aggravating factors listed in rule 4.421. Those factors were that: (1) the victim was particularly vulnerable; (2) Chavez Zepeda was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed; (3) the manner in which the crime was carried out indicates planning, sophistication, or professionalism; (4) Chavez Zepeda took advantage of a position of trust or confidence to commit the offense; and (5) Chavez Zepeda has engaged in violent conduct that indicates a serious danger to society. (Rule 4.421(a)(3), (a)(7), (a)(8), (a)(11), (b)(1).)

3

Chavez Zepeda opposed and the trial court granted the motion. At the hearing on the motion, the court noted that "[n]othing in this decision deprives the defendant from bringing a 995 motion." Chavez Zepeda waived arraignment, entered a plea of not guilty, and denied the allegations in the amended information.

On August 1, 2022, Chavez Zepeda filed a motion to set aside the aggravating factors under section 995. The motion argued that aggravating factors must be supported by evidence at a preliminary hearing and were not supported by sufficient evidence in this case. The motion further argued that borrowing aggravating factors from rule 4.421 violates the separation of powers clause under the California Constitution because they were drafted by the Judicial Council for use by trial judges and were not meant for use by juries. The motion included a brief argument that Chavez Zepeda was also demurring to the aggravating factors "on the ground that they do not state a public offense" as the factors under rule 4.421 were not authorized by statute.

The prosecution opposed the motion on the grounds that (1) aggravating factors are not required to be proved at a preliminary hearing; (2) sufficient evidence supported the aggravating factors at issue here in any event; and (3) use of rule 4.421 by a jury does not violate the separation of powers.

Following oral argument, the trial court denied Chavez Zepeda's motion and overruled his demurrer. The court was persuaded by the holding in *Barragan v. Superior Court* (2017) 148 Cal.App.4th 1478, 1485 (*Barragan*), which concluded that aggravating factors did not need to be supported by evidence at a preliminary hearing because they were not equivalent to statutory enhancements. The court further held that even if it was incorrect

4

on this point, the aggravating factors were supported by the evidence at the preliminary hearing here.

Chavez Zepeda filed a petition for writ of mandate or prohibition to direct the trial court to set aside its order and issue a new order granting his motion and sustaining the demurrer, or to refrain from further proceedings against Chavez Zepeda with respect to the charged aggravating factors. We issued an order for the People to show cause why the relief requested should not be granted.

## DISCUSSION

### I. Standard of Review

"Penal Code section 995 allows a defendant to challenge an information based on the sufficiency of the record made before the magistrate at the preliminary hearing. [Citation.] In reviewing the denial of a Penal Code section 995 motion to set aside an information, we 'in effect disregard[] the ruling of the superior court and directly review[] the determination of the magistrate holding the defendant to answer.' " (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1071–1072 (*Lexin*).) Where the issue raised in the petition presents a pure question of law, our review is de novo. (*People v. Superior Court* (*Ferguson*) (2005) 132 Cal.App.4th 1525, 1529.)

"Insofar as [the motion] rests on consideration of the evidence adduced, we must draw all reasonable inferences in favor of the information [citations] and decide whether there is probable cause to hold the defendants to answer, i.e., whether the evidence is such that 'a reasonable person could harbor a strong suspicion of the defendant's guilt.' " (*Lexin, supra*, 47 Cal.4th at p. 1072.)

## II. History of Section 1170 — Three Sentencing Schemes

In evaluating the arguments in this case, it will be helpful to bear in mind three distinct phases in the evolution of section 1170. The first began in 1977 when the determinate sentencing law (§ 1170 et seq.) (DSL) went into effect, replacing California's system of indeterminate sentences with "a system of specification of three possible terms of imprisonment for each offense." (*People v. Wright* (1982) 30 Cal.3d 705, 709 (*Wright*).) To implement this system, section 1170, subdivision (b) provided that " 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.' " (*Ibid.* [quoting former § 1170, subd. (b)].) Under this version of section 1170, the trial court was to determine aggravating and mitigating circumstances by a preponderance of the evidence. (*People v. Sandoval* (2007) 41 Cal.4th 825, 836 (*Sandoval*).) The DSL directed the Judicial Council to "seek to promote uniformity in sentencing" by "[t]he adoption of rules providing criteria for the consideration of the trial judge at the time of sentencing regarding the court's decision to . . . [¶] (2) Impose the lower, middle, or upper prison term." (§ 1170.3, subdivision (a); see *Wright*, at p. 709.) Among the results of that delegation of authority was what is now rule 4.421, entitled "Circumstances in aggravation." Rule 4.421(a) lists "[f]actors relating to the crime"; rule 4.421(b) lists "[f]actors relating to the defendant," and rule 4.421(c) provides for consideration of "[a]ny other factors statutorily declared to be circumstances in aggravation or which reasonably relate to the defendant or the circumstances under which the crime was committed."

In 2007, the United States Supreme Court found this sentencing scheme unconstitutional on the ground that "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be

6

found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham v. California* (2007) 549 U.S. 270, 281 (*Cunningham*).) The Legislature responded by amending section 1170 to give "trial judges broad discretion in selecting a term within a statutory range, thereby eliminating the requirement of a judge-found factual finding to impose an upper term. [Citations.] SB 40 amended section 1170 so that (1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states." (*People v. Wilson* (2008) 164 Cal.App.4th 988, 992.) Under section 1170, subdivision (b) as amended, sentencing courts were to determine which of the three possible terms of imprisonment " 'best serve[d] the interests of justice.' " (*Wilson*, at p. 992.)

Most recently, Senate Bill 567 amended section 1170, subdivision (b) to make the middle term the maximum that may be imposed absent additional findings. (§ 1170, subd. (b)(1).) To comply with *Cunningham*, section 1170(b)(2) now provides that a court may impose the upper term only if "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." In its analysis of Senate Bill 567, the Senate Committee on Public Safety noted that the bill's proponents "argue that this change is necessary to ensure that harsher sentences receive the greatest scrutiny and justification before they are imposed," and that "[b]y allowing aggravating factors to be submitted to the factfinder, defendants will be better able to dispute the information on the record that may not be

true." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) Apr. 13, 2021, p. 4 (Sen. Com. Analysis).)[2]

### III. Separation of Powers and the Nondelegation Doctrine

Chavez Zepeda's argument based on the separation of powers and the nondelegation doctrine raises a threshold question about how to interpret the phrase "circumstances in aggravation" in section 1170(b)(2)—specifically, whether it refers to the aggravating factors listed in rule 4.421(a) and (b). He contends that our interpretation of the statute should be guided by the doctrine of constitutional avoidance, which provides that "a statute should not be construed to violate the Constitution ' " 'if any other possible construction remains available.' " ' " (*People v. Garcia* (2017) 2 Cal.5th 792, 804.) Arguing that it would raise serious separation-of-powers concerns if section 1170(b)(2) referred to the factors in rule 4.421, Chavez Zepeda points out that "the Legislature has enacted dozens of statutory aggravating factors, some tied to individual offenses, and some with much wider applicability," many of which use the phrase "circumstance in aggravation" and refer expressly to subdivision (b) of section 1170. These statutory aggravating factors present no separation-of-powers problem because the Legislature

---

[2] After *Cunningham* was decided, our state Supreme Court held that the jury need find only one aggravating circumstance true in order to authorize imposition of the upper term, at which point the sentencing court was free to make additional factual determinations concerning aggravating circumstances in the exercise of its discretion in selecting the appropriate term from among those authorized. (*Black, supra*, 41 Cal.4th at pp. 815–816.) Senate Bill 567, however, effectively prohibits the court from relying on any aggravating circumstance that has not been found true by the jury, unless it falls within the exception in section 1170, subdivision (b)(3), which allows the court to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

itself has enacted them, so Chavez Zepeda argues that we should construe the phrase "circumstances in aggravation" to refer only to statutory aggravators and not to the additional factors listed in rule 4.421.

We do not find it appropriate to resolve the issue this way. As discussed below, the Legislature clearly intended to refer to the aggravating factors listed in rule 4.421 by the phrase "circumstances in aggravation," and it did not violate the separation of powers or the nondelegation doctrine by doing so. Because we see no ambiguity in the statute, we likewise reject the suggestion by Chavez Zepeda's amici that we should adopt Chavez Zepeda's construction under the rule of lenity, which " ' "generally requires that 'ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation.' " ' " (*People v. Reyes* (2020) 56 Cal.App.5th 972, 989.)

### A. Section 1170 Refers to Rule 4.421's Aggravating Factors

"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) However, "[t]he meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the

9

act." (*Ibid.*)

Rule 4.421 (formerly rule 421) has been in place since 1977.  Its title is "Circumstances in aggravation."  It would be remarkable for the Legislature to use the phrase "circumstances in aggravation" in section 1170(b)(2), without further elaboration, if it did not intend to include the aggravating circumstances enumerated in rule 4.421.  We presume that the Legislature acts against the backdrop of all governing law, and in using the identical phrasing that the Judicial Council did when addressing same topic, we do not believe it is reasonable to view the Legislature's choice of phrasing as a coincidence.  While Chavez Zepeda is correct that there are also many statutory aggravating factors to which section 1170(b)(2) refers, he identifies no basis to conclude that the Legislature determined when it enacted Senate Bill 567 that those statutory aggravating factors alone were adequate to achieve the goal of uniformity in sentencing or that judicial consideration of the aggravating circumstances in rule 4.421 was no longer warranted.

Undermining any such hypothesis is the fact that Senate Bill 567 left in place the language in section 1170, subdivision (a)(3), which tells courts to apply the factors in rule 4.421.  That subdivision requires courts to sentence the defendant to "one of the terms of imprisonment specified" when the statute specifies "three time periods," i.e., a lower, middle, and upper term. (§ 1170, subd. (a)(3).)  The next sentence reads:  "In sentencing the convicted person, the court shall apply *the sentencing rules of the Judicial Council.*" (*Id.*, italics added.)  Chavez Zepeda does not dispute that the italicized phrase includes the aggravating factors in rule 4.421, but argues that this language falls short of an express legislative authorization for the Judicial Council to come up with factors for use by juries.

Accepting Chavez Zepeda's argument, however, would effectively

10

nullify the provision that courts must apply the sentencing rules of the Judicial Council.  Under the amendments to section 1170(b)(2), sentencing courts cannot apply rule 4.421's aggravating factors unless the jury has first made findings with respect to them.  Chavez Zepeda argues that the factors in rule 4.421 may still be relied on in a court trial, or in sentencing on a guilty plea if the defendant has stipulated to them, and that they merely "have no applicability to jury trials."  But this construction is inconsistent with the statutory text because there is no carveout in section 1170, subdivision (a)(3) for jury trials.  Reading subdivision (a)(3) together with subdivision (b)(2) compels the conclusion that the Legislature intended that juries would now make findings on the aggravating circumstances in rule 4.421.

The legislative history of Senate Bill 567 further supports this conclusion.  The report by the Senate Committee on Public Safety explained that the California Rules of Court provide a "non-exhaustive list of circumstances in aggravation and mitigation for purposes of sentencing," and quoted all the factors enumerated in rule 4.421. (Sen. Com. Analysis, pp. 5–6.)  The fact that the report expressly referred to rule 4.421 is strong evidence that the Legislature had that rule in mind when it referred to "circumstances in aggravation."

Chavez Zepeda points out that Senate Bill 567 left unchanged the original grant of authority in section 1170.3, subdivision (a), which says that "[t]he Judicial Council shall seek to promote uniformity in sentencing" by "[t]he adoption of rules providing criteria *for the consideration of the trial judge at the time of sentencing*."  (Italics added.)  But for the reasons discussed above, we find that section 1170(b)(2) unambiguously conveys the Legislature's intent to have the jury make findings about the truth of

11

aggravating factors in rule 4.421, and it necessarily follows from that intent that the Legislature also intended to provide the Judicial Council with the authority to promulgate aggravating factors that the jury would be asked to consider. The statute thus provides the necessary "indication" that the Legislature intended to delegate authority for that purpose. (See *People v. Figueroa* (1999) 68 Cal.App.4th 1409, 1415 (*Figueroa*); cf. *Coastside Fishing Club v. California Resources Agency* (2008) 158 Cal.App.4th 1183, 1205 [Legislature may lay down test or standard for the exercise of delegated authority "expressly or by implication"].) Moreover, rule 4.421 still *does* provide "criteria for the consideration of the trial judge at the time of sentencing," and the legislative history discussed above indicates that the Legislature saw the jury's findings as a way to improve the reliability of the court's sentencing decisions.

Lastly, Chavez Zepeda invokes *Sandoval*'s observation that the factors in rule 4.421 "were drafted for the purpose of guiding judicial discretion and not for the purpose of requiring factual findings by a jury beyond a reasonable doubt." (*Sandoval, supra*, 41 Cal.4th at p. 849.) The court's account of the genesis of the rule, however, does not call into question our conclusion about the Legislature's intent in Senate Bill 567. When *Sandoval* was decided, the Legislature had just amended its sentencing scheme in response to *Cunningham* to give trial judges the discretion to impose the lower, middle, or upper term without having to make factual findings. (*Sandoval*, at pp. 843–844.) The question before the court was what remedy to apply to a sentence imposed in violation of *Cunningham* in a case on direct appeal when it was unclear whether the Legislature intended the new scheme to apply to resentencing hearings. (*Id.* at p. 845.) In explaining why it selected the alternative that the Legislature itself had just chosen, the

12

court observed that "engrafting a jury trial onto the sentencing process established in the former DSL would significantly complicate and distort the sentencing scheme." (*Id*. at p. 848.) *Sandoval* did not hold, however, that the more complicated alternative of having the jury make findings about aggravating circumstances would be impermissible, and indeed, it observed that "such a process would comply with the constitutional requirements of *Cunningham*." (*Ibid*.) After roughly a decade and a half of permitting courts to exercise their discretion to choose any of the three sentencing terms, the Legislature opted, as described by Senate Bill 567's proponents, "to ensure that harsher sentences receive the greatest scrutiny and justification before they are imposed," requiring jury findings of aggravating circumstances beyond a reasonable doubt. (Sen. Com. Analysis, p. 4.) Notwithstanding the concerns *Sandoval* expressed regarding this then-hypothetical scheme, in Senate Bill 567 the Legislature chose to have juries consider the aggravating circumstances in rule 4.421.

## B. The Jury's Consideration of the Aggravating Circumstances in Rule 4.421 Does Not Violate the Separation of Powers or the Nondelegation Doctrine

Having concluded that the phrase "circumstances in aggravation" in section 1170(b)(2) includes the factors listed in rule 4.421, we now consider whether it violates the separation of powers or the nondelegation doctrine. "The California Constitution establishes a system of state government in which power is divided among three coequal branches (Cal. Const., art. IV, § 1 [legislative power]; Cal. Const., art. V, § 1 [executive power]; Cal. Const., art. VI, § 1 [judicial power]), and further states that those charged with the exercise of one power may not exercise any other (Cal. Const., art. III, § 3)." (*People v. Bunn* (2002) 27 Cal.4th 1, 14.) Though the branches share "a certain degree of mutual oversight and influence," they are vested "with

13

certain 'core' [citation] or 'essential' [citation] functions that may not be usurped by another branch." (*Ibid.*) As relevant here, "[t]he legislative branch defines those crimes that can be charged, the executive branch decides what crimes to charge, and the judicial branch decides whether to sustain those charges." (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 592 (*Manduley*).) The power to " 'fix penalties' " is also " 'vested exclusively in the legislative branch.' " (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 516.)

"The legislative branch of government, although it is charged with the formulation of policy, properly may delegate some quasi-legislative or rulemaking authority to administrative agencies." (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 299.) While the Legislature may not "confer[] upon an administrative agency unrestricted authority to make fundamental policy decisions," the nondelegation doctrine "does not invalidate reasonable grants of power to an administrative agency, when suitable safeguards are established to guide the power's use and to protect against misuse. [Citations.] The Legislature must make the fundamental policy determinations, but after declaring the legislative goals and establishing a yardstick guiding the administrator, it may authorize the administrator to adopt rules and regulations to promote the purposes of the legislation and to carry it into effect." (*Wright*, *supra*, 30 Cal.3d at pp. 712–713.)

Chavez Zepeda argues that the use of non-statutory aggravating factors by a jury violates the separation of powers doctrine because only the Legislature and not the Judicial Council may decide what facts trigger an upper term sentence. He also argues that interpreting section 1170(b)(2) to include non-statutory aggravating factors would "give prosecutors the

14

unchecked power to draft aggravating factors," especially given rule 4.421(c)'s residual clause, which provides for the consideration of "[a]ny other factors . . . that reasonably relate to the defendant or the circumstances under which the crime was committed." We have no occasion to consider the second argument here, however, because in this case the People did not use the residual clause to propose aggravating factors beyond those specifically enumerated in the rule. Accordingly, we do not address whether the residual clause presents any separation-of-powers or nondelegation problem.

In deciding whether the Legislature's delegation of authority to the Judicial Council to draft the aggravating factors that appear in rule 4.421 is improper, we do not write on a clean slate. In *Wright*, the California Supreme Court rejected the argument that the Judicial Council's adoption of rule 4.421 represented an unconstitutional delegation of legislative power. It first pointed to the language in Article VI, section 6 of the California Constitution that the Judicial Council may "perform other functions prescribed by statute." (*Wright, supra*, 30 Cal.3d at p. 711, italics omitted.) The court then held that in enacting the DSL, "the Legislature made the fundamental policy decision that terms were to be fixed by choosing one of the alternatives on the basis of circumstances relating to the crime and to the defendant. [Citations.] The Legislature directed the Judicial Council to adopt rules establishing criteria for imposing the upper or lower terms in order to promote uniformity." (*Id.* at p. 713.) In the court's view, the Judicial Council was permissibly implementing legislative policy. (*Ibid.*)

Our Supreme Court decided *Wright* in 1982, when trial courts were required to impose the middle term unless they found circumstances either in mitigation or aggravation of the crime. (*Wright, supra*, 30 Cal.3d at pp. 709, 713–714.) The question, then, is whether requiring the jury to find

15

aggravating factors beyond a reasonable doubt changes the analysis. Certain arguments can be rejected at the outset because they are not implicated by the additional role assigned to the jury. The People argue, for example, that the nondelegation doctrine does not apply because the Judicial Council is not an administrative agency, but this argument is inconsistent with *Wright*, which found that rule 4.421 was a permissible delegation of authority under the law pertaining to administrative agencies. (*Id.* at p. 712.) Chavez Zepeda, for his part, argues that we cannot avoid the nondelegation problem by finding that section 1170 incorporates by reference the existing factors in rule 4.421 because the Judicial Council may amend it, conceivably adding new factors or revising existing ones. We agree that any nondelegation problem cannot be avoided in that way, but note that the fact that rule 4.421 is potentially subject to revision was also true when *Wright* was decided.

Chavez Zepeda's first argument for distinguishing *Wright* is one we have already rejected. While the Supreme Court relied on the language in Article VI, section 6 of the California Constitution granting the Judicial Council authority to "perform other functions prescribed by statute," and found that condition satisfied by section 1170.3, subdivision (a)(2) (*Wright, supra*, 30 Cal.3d at p. 713), Chavez Zepeda argues that there is no statute granting the Judicial Council authority to adopt aggravating factors for consideration by the *jury* as opposed to by the court at sentencing. As discussed above, reading section 1170(b)(2) together with section 1170.3, subdivision (a)(2), we find the grant of authority to the Judicial Council in the new sentencing scheme sufficiently clear.

Second, Chavez Zepeda and his amici argue that such a statutory delegation is impermissible because " ' "the power to define crimes and fix penalties is vested exclusively in the legislative branch." ' " (*Manduley,*

16

*supra*, 27 Cal.4th at p. 552; see also *Figueroa, supra*, 68 Cal.App.4th at p. 1415 ["Only the Legislature, not an administrative body, may determine what conduct is unlawful and the penalty for the unlawful conduct"].) "The underpinnings of this nondelegation rule include the constitutional provision vesting legislative power in the Legislature, which requires the Legislature to make fundamental policy decisions." (*Figueroa*, at p. 1415.) Although *Wright* did not expressly consider an argument that the aggravating factors in rule 4.421 fixed penalties, it held that in "[c]hanging from the system of indeterminate sentences to determinate sentences and fixing the alternative terms, the Legislature made the fundamental policy decision that terms were to be fixed by choosing one of the alternatives on the basis of circumstances relating to the crime and to the defendant." (*Wright, supra*, 30 Cal.3d at p. 713.) After doing so, the Legislature properly delegated authority to the Judicial Council "to adopt rules establishing criteria for imposing the upper or lower terms in order to promote uniformity," and established a "standard" by "providing that the criteria be based on the absence or presence of aggravating or mitigating circumstances." (*Ibid.*) The court also noted that the membership of the Judicial Council, which includes "justices and judges who have extensive experience in determining sentences" and who are "uniquely situated to implement the legislative policy," constitutes a "suitable safeguard[]" to protect against misuse. (*Id.* at pp. 712–713.)

In our view, *Wright*'s analysis is not altered by the new requirement under section 1170(b)(2) that the jury find an aggravating factor true beyond a reasonable doubt. The Legislature "fixes penalties" within the meaning of the nondelegation doctrine by establishing the lower, middle, and upper terms for a given offense, and still makes the fundamental policy decision that a term among the triad is to be selected "on the basis of circumstances

17

relating to the crime and to the defendant." While a finding of aggravating factors is necessary before a court may exceed the middle term, that feature of the sentencing scheme was also present when *Wright* was decided, although the factfinding role was allocated to the court. From the perspective of the separation of powers, we do not see that it makes a difference whether the finder of fact is the court or the jury. Either way, the finder of fact is considering factors established by the Judicial Council. We are therefore unable to conclude that *Wright*'s holding has been undermined by the allocation of the factfinding function to the jury.

### IV. Due Process — Vagueness

In his writ petition, Chavez Zepeda asserts, albeit in connection with his separation-of-powers claim, that rule 4.421's factors are too amorphous for use by a jury, quoting the California Supreme Court's observation that, because they provide criteria intended to be applied to a broad spectrum of offenses, they "necessarily 'partake of a certain amount of vagueness which would be impermissible if those standards were attempting to define specific criminal offenses.' " (*Sandoval, supra*, 41 Cal.4th at p. 840 [quoting *People v. Thomas* (1979) 87 Cal.App.3d 1014, 1024 (*Thomas*)].) In his reply brief, he argues at greater length that the factors in rule 4.421 are too vague for use in jury trials, and two amici briefs contend that they are unconstitutionally vague in violation of due process because they fail to provide fair notice of prohibited conduct and invite arbitrary and discriminatory enforcement.

"Courts generally do not consider new issues raised in amicus briefs. Instead, '[i]t is a general rule that an amicus curiae accepts a case as he or she finds it,' and 'amicus curiae may not "launch out upon a juridical expedition of its own unrelated to the actual appellate record." ' " (*People v. Hannon* (2016) 5 Cal.App.5th 94, 105.) "However, the rule is not absolute.

18

An appellate court has discretion to consider new issues raised by an amicus." (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 503.) This is especially the case when the new issue raises a pure question of law and involves important questions of public policy. (*Ibid.*)

Because those considerations apply here and the amicus briefs elaborate on arguments in Chavez Zepeda's own briefing—and because the prohibition against vague laws "rests on the twin constitutional pillars of due process and separation of powers" (*United States v. Davis* (2019) __ U.S. __, __ [139 S.Ct. 2319, 2325] (*Davis*))—we exercise our discretion to address whether the factors in rule 4.421 are unconstitutionally vague if considered by a jury.

### A. No Categorical Exemption for Aggravating Circumstances

The government violates the due process clause "by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. [Citation.] The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.' [Citation.] These principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences." (*Johnson v. United States* (2015) 576 U.S. 591, 595–596.)

Sentencing rules, however, do not necessarily "fix sentences" for the purpose of triggering the protections of the due process clause. Although it predates *Johnson*, in *Thomas, supra*, 87 Cal.App.3d at page 1023, the court found that the aggravating factors in the predecessor to rule 4.421 were not subject to a vagueness challenge because they were "not intended to give people advance warning of prohibited activities" but instead "to provide

19

guidance to sentencing judges." Similarly, in *Beckles v. United States* (2017) 580 U.S. 256, 265 (*Beckles*), the Supreme Court held that the federal sentencing guidelines, which the court had previously construed as advisory (see *United States v. Booker* (2005) 543 U.S. 220, 245 (*Booker*)), were not subject to a vagueness challenge because they did not implicate the twin concerns of notice and arbitrariness. With respect to notice, "even perfectly clear Guidelines could not provide notice to a person who seeks to regulate his conduct so as to avoid particular penalties within the statutory range" because the judge retains the discretion to impose an enhanced sentence notwithstanding a guideline recommendation to the contrary. (*Beckles*, at p. 265.) And the Court explained that, while an unconstitutionally vague law invites arbitrary enforcement if it permits judges and jurors "to prescribe the sentences or sentencing range available," the guidelines do not present that concern because they only "advise sentencing courts how to exercise their discretion within the bounds established by Congress." (*Id.* at p. 266.) Relying on *Thomas* and *Beckles*, the People argue that the void-for-vagueness doctrine categorically does not apply to the aggravating circumstances in rule 4.421.

What makes rule 4.421 different in its present context both from the predecessor rule considered in *Thomas* and from the advisory guidelines considered in *Beckles* is that a court has no authority to impose an upper term sentence unless a jury has found one or more aggravating factors true beyond a reasonable doubt. Again, the constitutional requirement of a jury finding was established in *Cunningham*, which applied to California's sentencing scheme the rule originally announced in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*) that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

20

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (See *Cunningham, supra*, 549 U.S. at p. 282.)[3] Because a judge could not impose an upper-term sentence in the absence of an aggravating factor (under the pre-*Cunningham* rules), "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." (*Id.* at p. 288.)

The People argue that, because section 1170(b)(2) *adds* due process protections for the defendant that did not exist under the preceding system of unfettered judicial discretion, the new sentencing scheme cannot have a due process problem when the prior system did not. While this argument might seem plausible at first blush, it does not withstand scrutiny, as the *Apprendi/Blakely/Cunningham* line of cases illustrates. (See *Blakely, supra*, 542 U.S. at p. 308 [rejecting the dissent's argument that the constitutionality of indeterminate sentencing schemes implies the constitutionality of

---

[3] *Apprendi* located its rule both in the Sixth Amendment and in the due process clause. (*Apprendi, supra*, 530 U.S. at pp. 476–477; see also *People v. Izaguirre* (2007) 42 Cal.4th 126, 131 [*Apprendi*'s rule "is compelled by the federal Constitution's Fifth Amendment right to due process and Sixth Amendment right to jury trial, made applicable to the states through the Fourteenth Amendment"].) By contrast, in *Cunningham* and other post-*Apprendi* cases, the Supreme Court focused on the Sixth Amendment without mentioning due process. (See *Cunningham, supra*, 549 U.S. at p. 274; *Ring v. Arizona* (2002) 536 U.S. 584, 588; *Blakely v. Washington* (2004) 542 U.S. 296, 298 (*Blakely*); *Booker, supra*, 543 U.S. at p. 226; see also Chiesa, *When an Offense Is Not an Offense: Rethinking the Supreme Court's Reasonable Doubt Jurisprudence* (2011) 44 Creighton L.Rev. 647, 691 & fn. 242.) Nonetheless, the Supreme Court has not repudiated due process as a foundation, which is the jurisprudential source of the requirement of proof beyond a reasonable doubt, as distinct from the requirement of a jury determination. (See *In re Winship* (1970) 397 U.S. 358, 364; *United States v. C.T.H.* (6th Cir. 2012) 685 F.3d 560, 562–563; see also Stith, Apprendi*'s Two Constitutional Rights* (2021) 99 N.C. L.Rev. 1299, 1306–1307.)

determinate sentencing schemes].)  Those cases establish that the addition of some process (the requirement of an aggravating factor) makes constitutionally necessary the addition of more process (jury findings beyond a reasonable doubt).  To say that the middle term is "the relevant statutory maximum" (*Cunningham, supra*, 549 U.S. at p. 288) is to say, in effect, that the Legislature has created a liberty interest in a sentence that does not exceed the middle term (*Blakely,* at pp. 309, 313; *Apprendi, supra*, 530 U.S. at pp. 484–485, 495).  Liberty interests, once created, are subject to the requirements of the due process clause.  (See, e.g., *Wilkinson v. Austin* (2005) 545 U.S. 209, 221 (*Austin*); *Swarthout v. Cooke* (2011) 562 U.S. 216, 220.)  And regardless, it is difficult to see how the right to jury findings beyond a reasonable doubt is meaningfully protected if the aggravating factors are so vague that jurors cannot plausibly be expected to make sense of them or to render a non-arbitrary determination.

Courts in other jurisdictions have reached differing conclusions when considering whether aggravating factors in a post-*Apprendi* sentencing regime are subject to a constitutional vagueness challenge.  Arizona's high court invalidated as unconstitutionally vague the state's "catch-all aggravator," defined as " 'any other factors which the court may deem appropriate to the ends of justice,' " when it was used to increase the statutory maximum sentence and no clearly enumerated aggravator was found consistently with *Apprendi*.  (*State v. Schmidt* (2009) 220 Ariz. 563, 565–566; see *State v. Bonfiglio* (2013) 231 Ariz. 371, 373 & fn. 1 [same result with amended catch-all aggravator that permits the trier of fact to consider " [a]ny other factor that the state alleges is relevant to the defendant's character or background or to the nature or circumstances of the crime' "].)  And while Minnesota's high court held that a vagueness challenge did not lie

to the state's "particular cruelty" aggravating factor, it reached that result by concluding that "particular cruelty" is not a "fact" that must be found by the jury, but rather a "reason" the court may use to impose a sentence outside the presumptive range based on additional facts the jury found beyond those established by the guilty verdict, such as that the defendant "sprayed the handcuffed victims with chemicals." (*State v. Rourke* (Minn. 2009) 773 N.W.2d 913, 919–922.) While we will not adopt that approach to the question here,[4] the Minnesota court's reasoning at least implicitly accepts that a vagueness challenge would lie to anything *Apprendi* requires the jury to find beyond a reasonable doubt. By contrast, intermediate appellate courts in Washington have held that the requirement of jury findings does not make aggravating factors susceptible to a vagueness challenge, reasoning that those factors do not establish the statutory maximum and courts are not

---

[4] The text of section 1170(b)(2) arguably allows for a distinction to be drawn between "circumstances in aggravation" that can justify the imposition of the upper term and "*the facts underlying* those circumstances" that the jury must find true beyond a reasonable doubt. (Italics added.) But no party has argued that we should attach any significance to the difference between those phrases. Consistent with the parties' approach, we therefore treat aggravating circumstances considered by the sentencing judge as identical to what the jury must find true beyond a reasonable doubt. Notwithstanding the court's reasoning in *Rourke*, the parties' approach here reflects what seems to us the practical reality that the line between "circumstances" and "facts underlying" them would often be difficult to draw, risking a violation of the defendant's rights under *Cunningham* as well as potentially undermining the Legislature's purpose in enacting Senate Bill 567. (See Sen. Com. Analysis, pp. 3–4.) Moreover, while rule 4.421 now refers to "factors" rather than "facts," *Cunningham* expressly rejected the dissent's argument that " 'circumstances in aggravation' " were not necessarily "facts." (*Cunningham, supra*, 549 U.S. at pp. 279–280; cf. *Black, supra*, 41 Cal.4th at p. 814, fn. 4 [while the jury must find facts, "[t]he trial court's evaluation of the relative weight of aggravating and mitigating circumstances is not equivalent to a factual finding"].)

*required* to impose an exceptional sentence based on the jury's finding. (See, e.g., *State v. Brush* (2018) 5 Wn.App.2d 40, 61–63; *State v. DeVore* (2018) 2 Wn.App.2d 651, 660–665; *State v. Burrus* (2021) 17 Wn.App.2d 162, 175–177.)

While the Washington courts identify relevant considerations, we are not persuaded that they justify a decision to afford no due process significance to the Supreme Court's holding that "the relevant 'statutory maximum' " in the state's scheme, as in California's, is the maximum the judge "may impose *without* any additional findings." (*Blakeley, supra*, 542 U.S. at pp. 303–304.) The relevant liberty interest exists if an aggravating factor "exposes" the defendant to a greater penalty. (*Apprendi, supra*, 530 U.S. at p. 483.) *Beckles* held that notice was not implicated because the judge had the discretion to impose the statutory maximum even in the absence of an aggravating factor—the feature that is missing from both California's and Washington's sentencing schemes. (*Beckles, supra*, 580 U.S at p. 265.) But perhaps more importantly, as we have noted, the right to jury findings of aggravating circumstances beyond a reasonable doubt would be of questionable value if what the jury was asked to find was so vague as to be beyond its ability meaningfully to consider. At that point, the risk of arbitrariness becomes unacceptably high. We therefore decline to hold that aggravating factors are categorically exempt from a constitutional vagueness challenge.

## B. Chavez Zepeda Does Not Establish That the Aggravating Circumstances Are Unconstitutionally Vague

At the same time, it is important to recall the Supreme Court's admonition that "the requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands.' " (*Austin,*

*supra*, 545 U.S. at p. 224.)  Although a judge lacks the authority to impose an upper-term sentence in the absence of a jury finding of one or more aggravating factors, the government's purpose in specifying those factors is to establish bounds for the exercise of sentencing discretion rather than to "regulate the public" (*Beckles, supra*, 580 U.S. at p. 266), and the public has notice that the presence of an aggravating circumstance may subject a defendant to the upper term the Legislature has specified.  Moreover, the judge's discretion *not* to impose a greater sentence based on the jury's finding, if insufficient to alleviate all potential due process concerns, nonetheless offers some protection against "the risk of an erroneous deprivation of [the defendant's liberty] interest" (*Austin*, at pp. 225–226) that might attend an imprecise definition of an aggravating factor.  By contrast, where a court is *required* to impose a greater sentence based on the jury's finding, the amount of precision due process requires is undoubtedly greater, equivalent to that demanded for statutes specifying offenses.  (See, e.g., *Davis, supra*, 139 S.Ct. at p. 2324; *Johnson, supra*, 576 U.S. at p. 593; *People v. Superior Court (Engert)* (1982) 31 Cal.3d 797, 803.)[5]

---

[5] In *Engert*, the California Supreme Court found unconstitutionally vague a special circumstance that the murder was "especially heinous, atrocious, and cruel, manifesting exceptional depravity." (*Engert, supra*, 31 Cal.3d at pp. 801–803.)  In so holding, the court rejected "the People's argument that when the jury is determining the truth of the charged special circumstances, it is exercising a sentencing function and that, therefore, the requirements of due process for narrowness and clarity are lessened." (*Id.* at p. 803.)  However, as the court explained, a special circumstance finding "changes the crime from one punishable by imprisonment of 25 years to life to one which must be punished either by death or life imprisonment without possibility of parole." (*Ibid.*)  It thus requires the imposition of a greater sentence.  That is the context in which we understand the court's statement that "[t]he fact or set of facts to be found in regard to the special circumstance

For these reasons, our conclusion that the factors in rule 4.421 are subject to *some* constitutional vagueness standards does not mean they are condemned by *Sandoval*'s observation, whether or not considered as dicta, that they "necessarily 'partake of a certain amount of vagueness which would be impermissible if those standards were attempting to define specific criminal offenses.' " (*Sandoval*, *supra*, 41 Cal.4th at p. 840.)  The factors do not attempt to define specific criminal offenses, and the sentencing judge's ultimate discretion remains a meaningful safeguard.  Moreover, the *Sandoval* court made this statement in the context of its harmless error analysis, explaining why, when an aggravating circumstance "rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*Ibid.*)  Nonetheless, in applying harmless error analysis to the facts of the case, the court did not cite the vagueness of any aggravating circumstance when it explained why it was not convinced beyond a reasonable doubt that the jury would have found the aggravating circumstances true, instead relying on the principal issues in dispute at trial and the jury's rejection of murder in favor of voluntary manslaughter. (*Id.* at pp. 841–843.)

We also do not think the factors in rule 4.421 must be invalidated under *Johnson*.  In that case, "the United States Supreme Court considered the 'residual clause' of the Armed Career Criminal Act of 1984 (ACCA) . . . ,

_____

is no less crucial to the potential for deprivation of liberty on the part of the accused than are the elements of the underlying crime," and thus that "there is no reason why due process should not require the same specificity in defining the special circumstance that it requires in the definition of the crime itself." (*Ibid.*)

26

which imposes increased penalties for the federal crime of felon in possession of a firearm if the defendant has three or more prior convictions for a violent felony." (*People v. Ledesma* (2017) 14 Cal.App.5th 830, 837.) The residual clause defined a "violent felony," as one, inter alia, that "(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." (*Johnson, supra*, 576 U.S. at pp. 593–594 [quoting ACCA, 18 U.S.C. § 924(e)(2)(B)].) The court had previously held that the term must be construed under the "categorical approach," in which "a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.' [Citation.] [¶] Deciding whether the residual clause covers a crime thus requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." (*Id.* at p. 596.)

It was the combination of these two features that led the court to conclude that the residual clause was unconstitutionally vague. First, the court saw no meaningful way for a judge to decide what kind of conduct the "ordinary case" of a crime involves, divorced from "real-world facts or statutory elements," particularly when the judge must imagine not only the criminal's own behavior but also how "the crime subsequently plays out," for example with bystanders who may respond to it. (*Johnson, supra*, 576 U.S. at p. 597.) In other words, in determining whether the defendant was previously convicted of a "violent offense," the court was to consider neither the statutory elements of the offense nor the way in which the defendant committed it, but was simply to imagine what an "ordinary case" of that offense looks like. Second, the difficulty in selecting the "ordinary case" was

27

then exacerbated by the uncertainty "about how much risk it takes for the crime to qualify as a violent felony," especially because the degree of risk posed by the four enumerated crimes—burglary, arson, extortion, and crimes using explosives—was itself unclear. (*Id.* at p. 598.) The court concluded that it is not possible to say whether an "ordinary case" of a crime like burglary or extortion presents "a serious potential risk of physical injury to another" both because the crimes can be committed in different ways that involve different levels of risk—a burglar might "invade an occupied home by night or an unoccupied home by day," and an extortionist might "threaten his victim in person with the use of force, or . . . by mail with the revelation of embarrassing personal information"—and because it was not clear how much risk was necessary to render the imagined "ordinary case" of the offense violent. (*Ibid.*)

*Johnson* provides no basis to conclude that aggravating factors are constitutionally objectionable simply because they use qualitative standards like "great violence," "high degree of cruelty, viciousness, or callousness," "particularly vulnerable," or "serious danger." (See rule 4.421(a)(1), (a)(3), (b)(1).) As the court noted, in general the application of such standards to "real-world conduct," as opposed to an imagined "ordinary case," does not raise a constitutional concern. (*Johnson, supra,* 576 U.S. at p. 604; see *Welch v. United States* (2016) 578 U.S. 120, 124 ["The Court's analysis in *Johnson* thus cast no doubt on the many laws that 'require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion.*' "]; *People v. Ledesma, supra,* 14 Cal.App.5th at p. 838.) To survive a vagueness challenge, "[i]t is not . . . necessary that a term be defined by statute, or even that it have a precise dictionary definition." (*People v. Borrelli* (2000) 77 Cal.App.4th 703, 721.) " [W]here the statute involves some

28

matters of degree as to which individuals and even jurors might reasonably disagree in their judgment, the statute will not for that reason alone be invalidated.' " (*People v. Poulin* (1972) 27 Cal.App.3d 54, 60; see *Walker v. Superior Court* (1988) 47 Cal.3d 112, 142.)  Imprecise standards can be fleshed out by judicial construction (*People v. Superior Court (J.C. Penney Corp., Inc.)* (2019) 34 Cal.App.5th 376, 407; *Walker*, at p. 143; *Borrelli*, at p. 721), as many of the factors in rule 4.421 have been (see, e.g., *People v. DeHoyos* (2013) 57 Cal.4th 79, 154; *People v. Esquibel* (2008) 166 Cal.App.4th 539, 558; *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1262; *People v. Reed* (1984) 157 Cal.App.3d 489, 492; *People v. Gonzales* (1989) 208 Cal.App.3d 1170, 1172).

Chavez Zepeda and his amici focus on the requirement under California law that an aggravating circumstance must "make[] the offense 'distinctively worse than the ordinary.' " (*Black, supra*, 41 Cal.4th at p. 817 [quoting *People v. Moreno* (1982) 128 Cal.App.3d 103, 110].)  They argue that this requirement, when coupled with a qualitative or subjective standard in the aggravating circumstance itself, creates the same dual vagueness problem that gave rise to the court's holding in *Johnson*.  But we think the abstraction of the "ordinary case" that troubled the court in *Johnson* is not equivalent to the "distinctively worse than the ordinary" standard under California law.  Courts applying that standard have not imagined an abstract, "ordinary case" to determine whether a finding of an aggravating circumstances is warranted by the facts of the case.  Rather, they have considered whether the manner of the crime's commission was distinctively worse "when compared to other ways in which such a crime could be committed." (*People v. Harvey* (1984) 163 Cal.App.3d 90, 117 [considering "viciousness and callousness"]; accord, *People v. Charron* (1987)

29

193 Cal.App.3d 981, 994 ["planning and sophistication"]; see also *People v. Lincoln* (2007) 157 Cal.App.4th 196, 204 [" 'A fact is aggravating if it makes defendant's conduct distinctively worse than it would otherwise have been.' "] [quoting *People v. Zamarron* (1994) 30 Cal.App.4th 865, 872]; *People v. Leung* (1992) 5 Cal.App.4th 482, 504 ["the court must decide whether the particular circumstance at issue renders the collective group of offenses distinctively worse than the group of offenses would be were that circumstance not present"].) These various phrases—"distinctively worse than the ordinary," "when compared to other ways in which such a crime could be committed," "distinctively worse than it would otherwise have been"—are different ways of expressing the same concept, and we do not see any indication that our Supreme Court's use of the first phrase in *Black* was intended to endorse one formulation over others expressed in the caselaw or to impose a requirement of imagining an abstraction akin to what was at issue in *Johnson*.

When appellate courts have reversed an upper-term sentence on the ground that the cited aggravating circumstance did not make the commission of the crime distinctively worse, they have generally concluded that the circumstance at issue was likely to be present in most any instance of the offense or added little to the wrongfulness already inherent in its commission. For example, in *People v. Piceno* (1987) 195 Cal.App.3d 1353, 1357, the court rejected the finding that the victim of vehicular manslaughter was " 'particularly vulnerable' " because his vulnerability could not be "distinguished from that of all other victims killed by drunk drivers." Since "all victims of vehicular manslaughter" are vulnerable by being "in the wrong place at the wrong time," the court reasoned, "[t]he element of vulnerability is inherent in the very crime of vehicular manslaughter caused by a driver under the influence of alcohol, and to use that factor to aggravate the term is

improper, absent 'extraordinary' circumstances." (*Id.* at p. 1358.) Similarly, in *People v. Fernandez* (1990) 226 Cal.App.3d 669, 682–683, the court rejected as aggravating circumstances that the defendant's behavior "shows an inability or refusal to 'conform to the mores of society' " or is " 'beyond all acceptable norms of society that we live in today' " because they "describe and apply to *all* persons convicted" of lewd and lascivious conduct upon a child. And in *People v. Rodriguez* (1993) 21 Cal.App.4th 232, 241–242, the court concluded that the defendant's "act of 'reracking' his pistol to correct a misfire" did not make his use of a firearm "worse than the ordinary" because "the act was nothing more than preparatory to carrying out the intent to shoot." (See also, e.g., *People v. McNiece* (1986) 181 Cal.App.3d 1048, 1061 [in a case of vehicular manslaughter, "[a]lthough [the victim's] death was most tragic, cruelty, viciousness, or callousness on appellant's part beyond the occurrence of the accident was not shown"], overruled on other grounds in *People v. Flood* (1998) 18 Cal.4th 470; *People v. Young* (1983) 146 Cal.App.3d 729, 734 ["To say an assault with a deadly weapon is an extremely serious offense merely states the obvious and does not have an effect of making the offense distinctly worse"]; *People v. Moreno, supra*, 128 Cal.App.3d at p. 110 [no basis to conclude that knives are "distinctively worse than other types of weapons"; "use of a deadly weapon is an element of the crime and the fact that the defendant must pick one of several instruments does not change the result"].)

Comparing the defendant's commission of the offense with other ways in which the same offense has been or may be committed does not require the decisionmaker to define a single, imaginary fact pattern as the "ordinary" way of committing the offense, as the Supreme Court deemed necessary to determine whether it is a "violent felony" within the meaning of the ACCA's

residual clause. The difficulty the *Johnson* court perceived in identifying the "ordinary case" had nothing to do with the relative experience of juries and judges; indeed, the determination whether the residual clause applied was made by the sentencing judge. (*Johnson*, *supra*, 576 U.S. at p. 595.) By contrast, the court's concern in *Sandoval* was with "imprecise terms that implicitly require comparison of the particular crime at issue to other violations of the same statute, a task a *jury* is not well suited to perform." (*Sandoval*, *supra*, 41 Cal.4th at p. 849, italics added.) We understand this statement to mean that a judge is likely to have seen many occurrences of the same offense, and is therefore in a better position than a jury to evaluate whether its commission in a particular case is distinctively worse.

Notwithstanding the additional perspective that a judge who has sentenced many defendants may possess, we do not find the requirement that an aggravating circumstance make the commission of the offense distinctively worse "when compared to other ways in which such a crime could be committed" (*People v. Harvey*, *supra*, 163 Cal.App.3d at p. 117) so vague as to place the task beyond any jury's competence and thereby to give rise to unacceptable arbitrariness. We note that jurors can be (and we expect that they will be) given additional guidance and explanation, both in the meaning of qualitative terms, which have been defined in the caselaw over the years, and in the meaning of the requirement that the aggravating circumstance make the commission of the offense distinctively worse. Indeed, while this appeal was being briefed, the Judicial Council developed jury instructions for 11 of the aggravating factors in rule 4.421. (See CALCRIM

Nos. 3224–3234.)[6]  Moreover, given the purpose of aggravating circumstances and the court's discretion to decline to impose the upper term, we conclude that due process notice requirements are satisfied by notice of the upper term and of the fact that wrongfulness beyond that inherent in the commission of the offense, and along the dimensions identified in rule 4.421(a) and (b), may subject a person to it.

In sum, we do not find that the individual factors listed in rule 4.421 are invalid simply because they use qualitative terms that may not be defined before the jury is instructed, or because they are subject to the requirement that an aggravating circumstance must make the commission of the offense "distinctively worse than the ordinary."  We note, however, that nothing in the foregoing discussion precludes a conclusion that a particular aggravating circumstance may be unconstitutionally vague for reasons that have not been raised here.  Similarly, because the People in this case did not

---

[6] The parties have not addressed the substance of those instructions in their briefs, and we do not consider them here except to make one observation based on the discussion above.  Each of the instructions includes a provision that reads: "You may not find the allegation true unless all of you agree that the People have proved that the defendant's conduct was distinctively worse than an ordinary commission of the underlying crime." (CALCRIM Nos. 3224–3234.)  As Chavez Zepeda points out, the commentary in each case states:  "The committee is aware of *Johnson v. United States* (2015) 576 U.S. 591, 597–598 . . . in which the United States Supreme Court held that determining what constitutes an 'ordinary' violation of a criminal statute may create a constitutional vagueness problem."  As previously discussed, we do not see an equivalence between the abstract "ordinary case" in *Johnson* and California's requirement that an aggravating circumstance make the commission of the offense "distinctively worse than the ordinary."  We are not called upon to decide whether the phrase "distinctively worse than an ordinary commission of the underlying crime" in the instructions accurately articulates that requirement as applied in the caselaw or is consistent with constitutional vagueness standards.

propose their own aggravating circumstances in reliance on the residual clause in rule 4.421(c)—"Any other factors . . . which reasonably relate to the defendant or the circumstances under which the crime was committed"—we do not decide whether that provision is unconstitutionally vague under the principles we have articulated.

## V. Preliminary Hearings and Aggravating Factors

Lastly, Chavez Zepeda argues that the aggravating factors found against him must be set aside because they were not supported by evidence at the preliminary hearing. Citing *People v. Superior Court (Mendella)* (1983) 33 Cal.3d 754 (*Mendella*) and *Huynh v. Superior Court* (1996) 45 Cal.App.4th 891 (*Huynh*), he contends that "[w]hen the Legislature makes increased punishment hinge on a charged factual allegation to be proved to the jury, whatever formal label it uses, courts presume that it intended for the allegation to be supported by evidence at the preliminary hearing and subject to review under section 995." In light of Senate Bill 567's amendments to section 1170(b)(2), he asks us to apply that presumption here and find that aggravating factors are now subject to the same requirement, i.e., that they must be supported by probable cause.

As Chavez Zepeda acknowledges, there is no express statement in section 1170 as amended by Senate Bill 567 that circumstances in aggravation must be supported by probable cause at the preliminary hearing. Pointing out that some enhancement statutes do not refer to preliminary hearings (e.g., §§ 12022, 12022.5, 12022.7), he argues instead that the right to a preliminary hearing is a "background rule" that does not need to be repeated in every new enactment, and that the Legislature expressly carves out enhancements from the preliminary hearing requirement when it intends to do so (e.g., § 12022.1, subd. (c)). When Senate Bill 567 was enacted,

34

however, there was already appellate authority noting that "neither the Legislature nor the courts have ever deemed aggravating facts used to impose the upper term as being equivalent to statutory sentencing 'enhancements' . . . that must be alleged in the accusatory pleading and proved at the preliminary hearing." (*Barragan*, *supra*, 148 Cal.App.4th at p. 1485.)[7]  And *Sandoval* pointed out that "[s]ome aggravating factors may not be identifiable until after the trial, such as whether the defendant 'unlawfully prevented or dissuaded witnesses from testifying . . . or in any other way illegally interfered with the judicial process.' " (*Sandoval*, *supra*, 41 Cal.4th at p. 849 [quoting rule 4.421(a)(6)].)  "The Legislature is presumed to be aware of ' "judicial decisions already in existence, and to have enacted or amended a statute in light thereof." ' " (*People v. Giordano* (2007)

---

[7] Chavez Zepeda points out that *Barragan* arose in the immediate aftermath of *Cunningham*, and considered whether, in a case in which trial had already begun and the prosecution had not alleged aggravating circumstances, the prosecution could amend the information to allege them notwithstanding that they had not been presented at the preliminary hearing.  The parties and the court assumed that, without such an ability, *Cunningham* would preclude the trial court from imposing an upper-term sentence even though the prosecution had followed the rules as they were understood at the time. (*Barragan*, *supra*, 148 Cal.App.4th at p. 1485.)  The court thus focused on avoiding unfairness to the prosecution and frustration of the Legislature's intent to allow for imposition of the upper term to protect public safety—considerations that do not apply here. (See *ibid.*)  Chavez Zepeda is correct that *Barragan*'s legal significance was short-lived; two days after it was decided, the Legislature amended section 1170 to allow judges to impose the upper term without any findings of aggravating circumstances (Stats. 2007, ch. 3 (Sen. Bill No. 40) [eff. Mar. 30, 2007]), and within a few months the California Supreme Court in *Sandoval*, *supra*, 41 Cal.4th 825, applied the same rule to resentencing hearings.  Neither of these developments, however, nullified *Barragan*'s observation that there was no history of treating aggravating circumstances similarly to enhancements by requiring them to be pled and proved at the preliminary hearing.

42 Cal.4th 644, 659.)  Moreover, in several places in sections 1170 and 1170.1, the Legislature preserved "the distinction between sentencing factors and 'enhancements.' " (*People v. Pantaleon* (2023) 89 Cal.App.5th 932, 939 (*Pantaleon*) [citing § 1170, subds. (b)(3), (b)(5) and § 1170.1, subds. (d)(1), (d)(2)].)  In light of the Legislature's awareness of the distinction, we cannot presume that it intended silently to create a requirement that aggravating circumstances be supported by probable cause at a preliminary hearing.

*Mendella* considered caselaw holding that only "offenses," and not provisions relating to the penalty to be imposed, were subject to review by a motion to dismiss under section 995, ultimately rejecting the distinction and concluding that statutory enhancements were subject to dismissal if not supported by sufficient evidence at the preliminary hearing.  (*Mendella, supra,* 33 Cal.3d at p. 763.)  The court pointed out that the preliminary hearing and section 995 "operate as a judicial check on the exercise of prosecutorial discretion," not only in screening out groundless prosecutions, but also in preventing overcharging—a consideration that applies as much to enhancements as to offenses given their "significant impact on the number of years to which a defendant may ultimately be sentenced." (*Id.* at pp. 759– 760.)  As a result, enhancement allegations " 'may constitute powerful bargaining tools for the prosecutor.' " (*Id.* at p. 760.)  The court also expressed concern that, if enhancement allegations were unreviewable, the defendant could be prejudiced at trial by the introduction of evidence on an enhancement issue that is irrelevant to guilt of the substantive offense, or could be asked to defend against allegations the proof for which was withheld at the preliminary hearing. (*Id.* at pp. 760–761.)  Finally, the court noted that before the DSL was enacted, "certain enhancement provisions were contained in the statutory definitions of the particular offenses," and at that

36

time were subject to review by a section 995 motion.  (*Id*. at p. 762.)  "With the advent of the DSL, the provisions for such allegations were deleted from the definitions of the substantive offenses, were placed in distinct sections, and are now known as 'enhancements.' "  (*Id*. at p. 763.)  The court concluded, however, that "[n]othing in its history or form intimates that the Legislature intended by reorganizing the Penal Code to deprive the defendant of any procedural rights that he possessed prior to the new law."  (*Ibid*.)

In *Huynh*, the court held that penalty provisions, like enhancements, "require proof at the preliminary hearing and review under section 995." (*Huynh*, *supra*, 45 Cal.App.4th at p. 895.)  At issue was section 664, subdivision (a), which provides that the punishment for attempted murder is life with the possibility of parole if the attempted murder was "willful, deliberate, and premeditated."  The court acknowledged that enhancements and penalty provisions are different in that an enhancement adds a separate term to the base term, whereas a penalty provision specifies a greater base term.  (*Huynh*, at p. 895.)  But it concluded that it was "a distinction without a difference" in this context because, "[l]ike an enhancement, and unlike the greater and lesser degrees of certain offenses, 'a penalty provision prescribes an added penalty to be imposed when the offense is committed under specified circumstances.' "  (*Ibid*.)  The court also noted that the statute requires that the allegation that the murder was willful, deliberate, and premeditated "be pleaded and admitted or found true by the trier of fact," which is "language the Legislature habitually uses when defining enhancements."  (*Ibid*.; cf. *Pantaleon*, *supra*, 89 Cal.App.5th at pp. 939–940 [no statutory requirement that aggravating circumstances be pleaded].)

Unlike penalty provisions and enhancements, the finding of an aggravating factor by a jury does not require or prescribe an added penalty; it

merely authorizes the sentencing court to impose the upper term. With respect to enhancements, Chavez Zepeda argues that the distinction is not significant because, except where the Legislature has clearly and mistakenly said otherwise, courts have the discretion to strike enhancements or not to impose the penalty associated with them. (See § 1385; *People v. Jones* (2007) 157 Cal.App.4th 1373, 1378–1379.) Such discretion was not discussed in *Mendella*, however, and Chavez Zepeda does not address how or to what extent the considerations a court may apply in deciding whether to strike an enhancement differ from those it applies in deciding whether to impose the upper term based on an aggravating circumstance. (See, e.g., *Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 491–495 [discussing factors governing the exercise of discretion to dismiss an enhancement].) But regardless, the Legislature's recognition of the structural difference between enhancements and aggravating circumstances militates against a presumption that, without saying so, it intended to create a new right to a preliminary hearing for aggravating circumstances based on what might be characterized as a functional similarity between the two in practice.

With respect to penalty provisions, Chavez Zepeda argues that in *De La Cerda v. Superior Court* (2022) 75 Cal.App.5th 40, 59, the court held that section 311.11, subdivision (c) was a penalty provision, and points out that it authorizes the court to impose a greater sentence for possession of child pornography under certain circumstances but does not require that it do so. But the question in that case, which postdated the enactment of Senate Bill 567, was whether section 311.11, subdivision (c) defined substantive offenses, and nothing in the opinion sheds light on the Legislature's intent with respect to preliminary hearings when it enacted Senate Bill 567 months earlier. Moreover, when *Huynh* determined that penalty provisions should

be treated the same way as enhancements for the purpose of preliminary hearings, the premise of its decision was that both of them prescribed an added penalty to be imposed. (*Huynh, supra*, 45 Cal.App.4th at p. 895.) The argument that there may be exceptions to *Huynh*'s characterization of penalty provisions as requiring the imposition of a greater penalty is not a reason to extend its holding to findings that never require a greater penalty.

We do not doubt that allegations of aggravating circumstances, like enhancements, are powerful bargaining tools for the prosecutor, and we consider the overcharging of such allegations to gain unfair leverage in plea negotiations as objectionable as the overcharging of enhancements disapproved of in *Mendella*. At oral argument, the People emphasized that a preliminary hearing and motion under section 995 are not the only opportunities for a trial court to prevent improper or inadequately supported aggravating circumstances from going to the jury. They stated that a court can dismiss an aggravating circumstance under section 1385[8] or can reject it

_____

[8] While both the People and Chavez Zepeda agreed that section 1385 was available, neither cited *In re Varnell* (2003) 30 Cal.4th 1132, in which the California Supreme Court held that a trial court may not use section 1385 to disregard a "sentencing factor," defined as " ' a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense.' " (*Id.* at pp. 1134–1135 & fn. 3 [quoting *Apprendi, supra*, 530 U.S. at p. 494, fn. 19].) After *Cunningham*, an aggravating circumstance no longer satisfies this definition and must be submitted to the jury unless it falls within *Apprendi*'s exception for prior convictions. (See *Varnell*, at p. 1142; *Pantaleon, supra*, 89 Cal.App.5th at p. 941.) *Pantaleon* held that, at least as to aggravating circumstances based on prior convictions, there has been no change in law that would alter *Varnell*'s conclusion that due process does not impose a pleading requirement for aggravating circumstances. (*Pantaleon*, at p. 941.) The parties have not addressed the question left open by *Pantaleon*—whether, in light of

as inadequately supported after a hearing under Evidence Code section 402.[9] After the presentation of evidence, it can also direct the entry of a verdict in the defendant's favor under section 1118.1. Although the same procedural mechanisms are also available for enhancements, we accept the People's concession that a trial court is empowered to reject aggravating circumstances before it is called upon at sentencing to decide whether they warrant the imposition of the upper term.

While these mechanisms may be less effective in checking the overcharging of aggravating circumstances, the unfairness that results from such an abuse of prosecutorial discretion was only one of numerous considerations that led to the court's decision in *Mendella*. The court's concern there that the defendant could be prejudiced at trial by the introduction of evidence on an enhancement issue that is irrelevant to guilt of the underlying offense (*Mendella, supra,* 33 Cal.3d at p. 760) does not arise here because section 1170(b)(2) provides for bifurcated trials of allegations of

_____

*Cunningham*, due process requires notice in an accusatory pleading of aggravating circumstances that do not fall within *Apprendi*'s exception for prior convictions. Chavez Zepeda contends that there is a statutory pleading requirement imposed by section 1170(b)(2) itself, because it provides that "upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements." While this language contemplates that aggravating circumstances may be charged in the accusatory pleading, *Pantaleon* held that it does not go so far as to impose a pleading requirement. (*Pantaleon,* at p. 940.) With respect to the preliminary hearing, as noted below we find that Chavez Zepeda did not develop an argument that state due process requires proof of aggravating circumstances, which is an issue we therefore do not decide.

[9] The People also acknowledged that the prosecution has discovery obligations that require it to disclose in advance any evidence it intends to offer in support of an aggravating circumstance, minimizing the potential for surprise at trial.

aggravating circumstances. Moreover, unlike enhancements, aggravating factors were not historically part of the definition of substantive offenses, so there was no tradition of considering them at a preliminary hearing. (See *Mendella*, at pp. 762–763; *Barragan, supra,* 148 Cal.App.4th at p. 1485.) Allowing for consideration of aggravating factors at a preliminary hearing may be advisable as a policy matter to prevent overcharging and to promote fairness, but the novelty of the circumstances and the well-recognized distinction between aggravating factors and enhancements or penalty provisions prevent us from simply presuming that the Legislature intended to create a right to a probable cause determination for aggravating factors.

Finally, while Chavez Zepeda contends that he has a state due process right to a preliminary hearing on aggravating circumstances, he offers no argument or authority in support of that contention apart from his citations to *Mendella* and *Huynh*.[10] Due process is not mentioned in *Huynh*, and while *Mendella* stated in passing that the defendant has a "due process right to a pretrial determination of probable cause" (*Mendella, supra*, 33 Cal.3d at p. 759), it did not cast its decision about enhancements as a constitutional requirement—which would be inconsistent with Chavez Zepeda's argument elsewhere that the Legislature may specify when an enhancement is not subject to a probable cause requirement. *Mendella* also did not consider more generally for what kinds of allegations due process requires a probable cause determination. Because Chavez Zepeda has not otherwise developed the argument, we do not consider it. (Cf. *Pantaleon, supra*, 89 Cal.App.5th at

---

[10] Chavez Zepeda expressly disavowed any claim under federal due process in light of the California Supreme Court's holding that there is no federal due process right to a preliminary hearing beyond a probable cause hearing held to justify continued detention of the accused. (*Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1078–1079.)

p. 941 [rejecting contention that due process requires the prosecution to plead prior convictions used as a basis to impose upper-term sentences, but declining to decide whether due process requires other aggravating factors to be pleaded].)

Because we hold that aggravating circumstances need not be supported by evidence at the preliminary hearing, we do not reach Chavez Zepeda's arguments that the evidence here did not support them.

## DISPOSITION

The petition is denied.[11]

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.

---

[11] We deny the People's request for judicial notice. The request does not attach any specific documents and the People do not appear to rely on any documents in their briefing that are not already included in the exhibits to the petition. Moreover, the request was not made by separate motion as required under California Rules of Court, rule 8.252(a).

| | |
|---|---|
| Trial Court: | Superior Court of the City and County of San Francisco |
| Trial Judge: | Honorable Eric R. Fleming |
| Counsel for Defendant and Petitioner: | Manohar Raju, Public Defender<br>Matt Gonzalez, Chief Attorney<br>Eric Quandt<br>Oliver Kroll |
| Counsel for Real Party in Interest: | Brooke Jenkins<br>District Attorney<br>Brian Bringardner<br>Assistant District Attorney |
| Counsel for Amici Curiae California Public Defender's Association and Los Angeles County Public Defender's Office | Ricardo D. Garcia<br>Public Defender<br>Albert J. Menaster<br>Head Deputy<br>Nick Stewart-Oaten |
| Counsel for Amicus Curiae American Civil Liberties Union of Northern California | Emi Young |